(No. 60106.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JESSIE TRIPLETT, Appellant.

*Opinion filed October 18, 1985.*

468

William D. Heinz and Cynthia G. Shoenberger Bowman, of Jenner & Block, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Joan S. Cherry and Donna B. Moore, Assistant State's Attorneys, of counsel), for the People.

CHIEF JUSTICE CLARK delivered the opinion of the court:

On the morning of September 18, 1978, Alexander Nimoh, the manager of the Clark Oil Company service station located at 500 West Garfield Boulevard in Chicago (the service station), was robbed, shot three times in the head, and killed. The defendant, Jessie Triplett, was arrested in Milwaukee, Wisconsin, on November 13, 1978, in connection with the murder and the armed robbery. Triplett was returned to Chicago and charged by information with three counts of murder (Ill. Rev. Stat. 1977, ch. 38, pars. 9—1(a)(1) through (a)(3)), one count of armed robbery (Ill. Rev. Stat. 1977, ch. 38, par. 18—2), and two counts of armed violence (Ill. Rev. Stat. 1977, ch. 38, par. 33A—2). Following a jury trial in the circuit court of Cook County, the defendant was convicted of murder and armed robbery. On appeal, the appellate court reversed the defendant's convictions, on grounds

unrelated to this appeal, and remanded the cause for a new trial. *People v. Triplett* (1981), 99 Ill. App. 3d 1077.

On remand, a jury in the circuit court of Cook County again found defendant guilty of murder and armed robbery. He was subsequently sentenced to concurrent terms of 60 years' imprisonment for murder and 40 years for armed robbery. He appealed and in a Rule 23 order (87 Ill. 2d R. 23), the appellate court affirmed the trial court (122 Ill. App. 3d 1159). The defendant then petitioned this court for leave to appeal, and we granted his petition.

Two issues are presented on appeal: (1) whether the defendant was deprived of his sixth amendment right to confront the witnesses against him when the circuit court refused to allow the defendant's counsel to cross-examine a juvenile witness regarding that witness' possible interest and bias; and (2) whether the circuit court erred when it failed to hold a suppression hearing to determine if bank records, which were admitted into evidence, were tainted.

Troy Whitmore, who was 11 years old at the time of the murder and armed robbery and 16 years old at the time of the defendant's retrial, was the State's sole occurrence witness. Whitmore testified that he knew both Nimoh and the defendant from occasionally working at the service station.

According to Whitmore's testimony, he played hooky from school on September 18, 1978, to go to a tavern next door to the service station. Whitmore testified that as he approached the tavern he saw the defendant pass by in a green station wagon, pull into the service station, and park the car. Whitmore stood behind a gas pump and watched the defendant walk to the passenger side of the car, reach into the car, pull out a gun from a coat in the car, walk into the service station building, and put the gun to Nimoh's back. Whitmore told the jury that

the defendant and Nimoh then went into the back room and the defendant closed the door. After a few minutes Whitmore heard one gun shot. Shortly thereafter the defendant emerged from the back room carrying a pouch. After seeing the defendant come out of the back room, Whitmore ran away.

Whitmore testified that when he returned to the service station a few hours later the police were there. Whitmore was not questioned by the police at this time, nor did he tell the police what he had witnessed. Whitmore further testified that while he was at the service station he overheard conversations about Nimoh's murder.

The following day Whitmore returned to the service station and again found the police there. According to his testimony, and the testimony of the police, the police officers called Whitmore over to their car and asked him if he knew what had happened. At first Whitmore told them that he knew nothing about the murder. The officers then told Whitmore that he would go to jail if he did not tell them what he knew. Believing the police officers, Whitmore told them that "Eddie" had shot Nimoh. The police took Whitmore to the police station, where he was shown five photographs, and from these photographs Whitmore identified the defendant as "Eddie." (Whitmore testified that he called the defendant "Eddie" because the defendant looked like someone Whitmore knew whose name was Eddie.)

On cross-examination Whitmore stated, among other things, that he knew the defendant's car to be a green Lincoln Continental and not a green station wagon. He also testified that it did not rain the morning of September 18, 1978.

In addition to Whitmore, the State produced a number of other witnesses, two of whom were Clark Oil Company representatives. They testified that the defend-

ant, whom they knew as "Jessie Adams," had been an employee of the company and in fact had worked for Nimoh at the service station until Nimoh fired him. Their testimony also established that the defendant was familiar with the service station's floor plan and procedure for making bank deposits.

Mark Sanders, a friend and neighbor of the defendant's, testified that on Saturday, September 16, 1978, the defendant came to his house. During this visit the defendant told him that he was planning to rob the service station and asked him to go with him to "check [it] out." He told the jury that he refused to accompany the defendant and that the next time he saw defendant was when he appeared at Sanders' home at about 1 p.m. on September 18, 1978. He said that at this time he and defendant had a conversation during which defendant showed him a brown bag containing money and offered him money to hold a gun for him but he refused. He testified that it was during this conversation that he saw blood on the defendant's pants and shoes, that the defendant was wet from the rain, and that the defendant said he had to shoot "the guy" in the leg.

Sanders also testified that several days after the murder and armed robbery the police came to his house to question him but that he did not give them any information at that time. However, he said that on a subsequent visit from the police he told them what he knew and that they took him to the police station, where he identified a photograph of the defendant. After identifying the photograph, he took the police to the defendant's bank.

An officer of the defendant's bank also testified. He identified the defendant's bank records which showed that on September 18, 1978, the day of the robbery, the defendant deposited $924 into his savings account. (A Clark Oil Company representative testified that according to his calculations $1,373.88 had been stolen from

the service station on September 18, 1978.) The bank officer also identified the defendant's deposit slip for September 18, 1978. This slip indicated that the money had been deposited during the morning hours of September 18.

Other evidence introduced during the State's case in chief established that: (1) at the time of his arrest the defendant used the alias Johnny Burns and denied ever using the name Jessie Triplett or Jessie Adams; and (2) the defendant attempted to escape from the police while he was being transported from Milwaukee to Chicago.

After the State rested its case, the defendant presented an alibi defense. The defendant called a former girlfriend's mother and sister to testify. (Respectively, they were the grandmother and aunt of the defendant's child.) Both women testified that the defendant was at their house, located in the 8600 block of south Throop Street in Chicago, for most of September 18, 1978, including the morning hours. In addition, they testified that while the defendant was there he did not act in an unusual manner, he did not have a bag of money, and he did not have blood on his pants or shoes.

The defendant's mother also testified on her son's behalf. She stated that her son worked at a construction job and was paid in cash and that he kept this money as well as money won in gambling in a jar at home. The defendant's mother told the jury that she had constantly urged the defendant to place this money in a bank.

In addition to the witnesses mentioned above, the defendant also called a Chicago police officer to testify. The officer arrived at the service station at about 11:28 the morning of September 18, 1978. He told the jury that from observing the victim and from a comment that was directed to him from police laboratory technicians at the scene he concluded that the victim was shot only once.

Having set forth the general background of the case, we now turn to our analysis of the issues. The first issue which we have been asked to address is whether the defendant was denied his sixth amendment right to confront the witness against him when the circuit court refused to allow the defendant's counsel to cross-examine the juvenile occurrence witness regarding the witness' possible interest and bias.

At the defendant's retrial the State made a motion *in limine* asking the circuit court to prohibit the defendant from using Whitmore's juvenile record to show that Whitmore had a motive to be biased in his testimony. Defense counsel argued that the defendant had a right to confront Whitmore with respect to his contacts with the law. On the other hand, the State argued that the admission of a juvenile's record was within the discretion of the circuit court. Following two discussions, the circuit court ruled that it had the discretion to prohibit the type of cross-examination which the defense sought. Therefore, the circuit court prohibited the defendant from cross-examining Whitmore regarding his juvenile record.

On appeal from the defendant's retrial, in an unpublished Rule 23 order, the appellate court agreed with the circuit court and held that the circuit court had properly exercised its discretion in prohibiting cross-examination of Whitmore with respect to his juvenile record. 122 Ill. App. 3d 1159.

As stated earlier, Troy Whitmore was the State's sole occurrence witness. His juvenile record reveals that he had "contacts" with the police prior to September 18, 1978, the date of the murder and armed robbery involved in the present case. However, no formal juvenile proceedings were initiated against Whitmore regarding these "contacts."

At the time of the defendant's retrial, September 30,

1982, Whitmore was in the custody of the Department of Corrections. His custodial status was the result of an adjudication of delinquency on August 24, 1981, which stemmed from a burglary charge filed against him on February 17, 1981. In addition to this petition, 10 other petitions were filed against Whitmore between October 23, 1978, and August 3, 1981. Two of these ten petitions resulted in adjudications of delinquency. On one of these two petitions, Whitmore was placed on a year's probation and in fact was on probation at the time he testified at the defendant's first trial. The other adjudication was vacated, and the appellate court upheld the ruling. Three of the ten petitions were dismissed without prejudice on the motion of the State. Another one of Whitmore's petitions resulted in a directed verdict. On four of the 10 petitions the State moved that the petitions be stricken with leave to reinstate, and these motions were granted.

The defense sought to cross-examine Whitmore with respect to: (1) Whitmore's "contacts" with the police prior to September 18, 1978; (2) the adjudication of delinquency which resulted in Whitmore's placement with the Department of Corrections; and (3) the 10 other juvenile delinquency petitions that were filed against Whitmore between October 23, 1978, and August 3, 1981. The defendant's proposed purpose for such cross-examination was to show bias, interest, or motive on the part of Whitmore to testify for the State.

The sixth amendment provides in pertinent part:

"In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him ***." U.S. Const., amend. VI.

This right has been made obligatory on the States through the fourteenth amendment (*Pointer v. Texas* (1965), 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065) and includes the right to cross-examine a witness as to the witness' biases, interests, or motives to testify. *Peo-*

ple v. *Gonzalez* (1984), 104 Ill. 2d 332, 337; see *Davis v. Alaska* (1974), 415 U. S. 308, 315-17, 39 L. Ed. 2d 347, 353-54, 94 S. Ct. 1105, 1109-11.

We note, initially, that a "witness may be impeached by attacking his character by proof of conviction of an infamous crime. [Citation.] For this purpose only conviction may be proved, and proof of arrests, indictments, charges or actual commission of crime are not admissible." (*People v. Mason* (1963), 28 Ill. 2d 396, 400.) However, showing bias, interest, or motive to testify is also an accepted method of impeachment. With this method of impeachment, "the fact that a witness has been arrested or charged with a crime may be shown or inquired into where *it would reasonably tend to show that his testimony might be influenced by interest, bias or a motive to testify falsely.*" (Emphasis added.) (28 Ill. 2d 396, 401; see *People v. Wilkerson* (1981), 87 Ill. 2d 151, 156; *People v. Barr* (1972), 51 Ill. 2d 50, 51.) Therefore, although evidence of an arrest or indictment is not admissible to impeach credibility generally, it is admissible to show that the witness' testimony may be influenced by bias, interest, or motive to testify falsely.

Additionally, it is immaterial whether the arrest(s) or charge(s) to be used in impeaching the witness involves the same occurrence for which the defendant is on trial. *People v. Mason* (1963), 28 Ill. 2d 396, 401.

As stated, cross-examination to show bias, interest, or motive to testify falsely is a matter of right. Although the circuit court has no discretionary power to deny the defendant this right, the circuit court does have broad discretion to preclude repetitive or unduly harassing questioning on these matters. *People v. Phillips* (1981), 95 Ill. App. 3d 1013, 1020; *People v. Thompson* (1979), 75 Ill. App. 3d 901, 903.

Furthermore, when impeaching by showing bias, interest or motive, "the evidence used must give rise to

the inference that the witness has something to gain or lose by his testimony" and, therefore, the evidence used must not be remote or uncertain. *People v. Phillips* (1981), 95 Ill. App. 3d 1013, 1020; *People v. Merz* (1984), 122 Ill. App. 3d 972, 977. See *People v. Gonzalez* (1984), 104 Ill. 2d 332; *People v. Wilkerson* (1981), 87 Ill. 2d 151; *People v. Handley* (1972), 51 Ill. 2d 229; *People v. Barr* (1972), 51 Ill. 2d 50; *People v. Mason* (1963), 28 Ill. 2d 396.

In addition, the defendant need not show before cross-examining a witness as to the witness' possible bias, interest, or motive "that any promises of leniency have been made or any expectations of special favor exist in the mind of the witness. [Citation.] Further, defense counsel is entitled to inquire into such promises or expectations whether based on fact or imaginary. [Citations.]" *People v. Freeman* (1981), 100 Ill. App. 3d 478, 481.

Having set forth the law generally, we now consider each portion of Whitmore's record on which the defendant sought to cross-examine him.

Defendant had hoped to use Whitmore's "contacts" with the police prior to September 18, 1978, to show that he had a motive to cooperate with the police and to tell them what they wanted to hear when the police questioned him about the murder and armed robbery. It was only after the police threatened him with jail that he told the police that "Eddie" had shot the victim.

In *People v. Merz* (1984), 122 Ill. App. 3d 972, the defendant was allowed to cross-examine a juvenile witness regarding two juvenile court proceedings which resulted in adjudications and supervision. However, the defendant was precluded from cross-examining the witness about juvenile arrests and station adjustments which did not result in court actions and which occurred prior to the offense for which the defendant was on

trial.

The defense in *Merz* sought to use these juvenile arrests and station adjustments to show that the witness was biased because of an expectation of leniency. The issue was whether this evidence "should have been admissible for the purpose of offering a motive for the witness to testify falsely." *People v. Merz* (1984), 122 Ill. App. 3d 972, 977.

In analyzing this issue, the court was careful to note that the witness had not been placed on supervision or probation regarding any of the station adjustments and *that there were no pending proceedings arising out of the arrests.* The court stated: "[T]he fact that the witness is a minor does not operate to restrict the permissible scope of cross-examination necessary to develop any matters which tend to impeach his fairness or impartiality." *People v. Merz* (1984), 122 Ill. App. 3d 972, 977.

The court went on to conclude:

> "[W]e believe that under the circumstances here where the juvenile witness was arrested for several offense[s] and 'talked to' as part of a station adjustment procedure without any formal proceedings or supervision resulting therefrom, all occurring prior to the date of defendant's alleged crime and trial, the evidence sought to be introduced to show bias, interest or motive was too remote, uncertain, and speculative to be admissible for impeachment purposes. Defendant must at least present direct evidence, rather than uncertain or remote evidence, that such bias exists." 122 Ill. App. 3d 972, 977.

We believe the same to be true in the present case. Whitmore's "contacts" with the police prior to the date of the defendant's alleged crimes are too remote, uncertain and speculative to be admissible. These "contacts" do not give rise to an inference that Whitmore had something to be gained or lost by his testimony. Therefore, we hold that the defendant was not denied his sixth

amendment right when the circuit court precluded him from cross-examining Whitmore with regard to these prior police "contacts."

The defendant also sought to cross-examine Whitmore regarding the fact that Whitmore was in the custody of the Department of Corrections at the time that he testified at the defendant's retrial. The defendant sought to use this fact to show that Whitmore was possibly biased in his testimony.

In *Alford v. United States* (1931), 282 U. S. 687, 75 L. Ed. 624, 51 S. Ct. 218, an adult witness against the defendant was in the custody of Federal authorities. The trial court precluded the defense from cross-examining the witness with respect to the witness' custodial status. The Supreme Court unanimously reversed the defendant's conviction because of the trial court's action.

In *Alford*, defense counsel hoped to show that the witness was biased in his testimony because the witness testified either under promise or expectation of immunity, or under the coercive effect of being in the custody of the United States, which was conducting the prosecution against the defendant. 282 U.S. 687, 693, 75 L. Ed. 624, 629, 51 S. Ct. 218, 220.

The court stated: "Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them." (*Alford v. United States* (1931), 282 U.S. 687, 692, 75 L. Ed. 624, 628, 51 S. Ct. 218, 219.) The court noted the defendant was entitled to demonstrate that the witness' testimony was affected by fear or favor growing out of detention. Concluding that the "trial court cut off *in limine* all inquiry on a subject with respect to which the defense was entitled to a reasonable cross-examination," the court held that "[t]his was an abuse of discretion and prejudicial error." 282 U.S. 687,

694, 75 L. Ed. 624, 629, 51 S. Ct. 218, 220.

Although the court's decision in *Alford* rested on abuse of discretion, the court noted in *Davis v. Alaska* (1974), 415 U.S. 308, 318 n.6, 39 L. Ed. 2d 347, 354 n.6, 94 S. Ct. 1105, 1111 n.6, that "the constitutional dimension of our holding in *Alford* is not in doubt."

*Alford* and the present case are analogous. In *Alford*, the defendant was cut off *in limine* from cross-examining a government witness with respect to the witness' possible bias stemming from his custodial status. Likewise, in the present case, the defendant was cut off *in limine* from cross-examining a State witness with respect to the witness' possible bias stemming from his custodial status.

In the present case, had Troy Whitmore been an adult, the defendant clearly would have had a constitutional right to cross-examine him regarding his custodial status at the time he was testifying. See *Alford v. United States* (1931), 282 U.S. 687, 75 L. Ed. 624, 51 S. Ct. 218.

*Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105, supports the position that the defendant in the present case was denied his right to confrontation when he was precluded from cross-examining Whitmore regarding Whitmore's custodial status. In *Davis* the defendant was precluded from cross-examining a juvenile witness as to that witness' probationary status and hence his possible bias. The court declared that revealing a witness' possible biases, prejudices or ulterior motives was "a proper and important function of the constitutionally protected right of cross-examination." (415 U.S. 308, 316-17, 39 L. Ed. 2d 347, 354, 94 S. Ct. 1105, 1110.) The court went on to state:

"[I]t seems clear to us that to make *** inquiry [into the witness' credibility] effective, defense counsel should have been permitted to expose to the jury the facts from which

jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. [The defendant] was thus denied the right of effective cross-examination which ' "would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." *Brookhart v. Janis*, 384 U.S. 1, 3 [16 L. Ed. 2d 314, 86 S. Ct. 1245].' *Smith v. Illinois* [(1968), 390 U.S. 129, 131, 19 L. Ed. 2d 956, 959, 88 S. Ct. 748, 750.]" *Davis v. Alaska* (1974), 415 U.S. 308, 318, 39 L. Ed. 2d 347, 355, 94 S. Ct. 1105, 1111.

In *Davis*, the court had to balance the State's interest in protecting the confidentiality of a juvenile offender's record with the defendant's right to confront the witnesses against him. The court held: "The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require [the] yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness. *** [T]he State cannot, consistent with the right of confrontation, require the [defendant] to bear the full burden of vindicating the State's interest in the secrecy of juvenile criminal records." *Davis v. Alaska* (1974), 415 U.S. 308, 320, 39 L. Ed. 2d 347, 355, 94 S. Ct. 1105, 1112.

We find further support for our holding in section 2—10(1)(c) of the Juvenile Court Act. This section provides in pertinent part:

"Admissibility of Evidence and Adjudications in Other Proceedings.

(1) Evidence and adjudications in proceedings under this Act shall be admissible:

* * *

(c) *** in criminal proceedings in which anyone who has been adjudicated delinquent under Section 2—2 is to be a witness, and then only for purposes of impeachment and pursuant to the rules of evidence for criminal trials." Ill. Rev. Stat., 1982 Supp., ch. 37, par. 702—10(1)(c).

Additionally, we note that this section became effective on September 8, 1982, and that the defendant's retrial began on September 30, 1982. We further note that this section was not called to the circuit court's attention at the time the State's motion *in limine* was under consideration.

We hold that the defendant was denied his right to confront the witness against him when the circuit court precluded cross-examination of the State's juvenile occurrence witness Troy Whitmore to show that the witness was in custody at the time he was testifying against the defendant.

We now consider whether the defendant was denied his sixth amendment right when he was precluded from cross-examining Whitmore with respect to any or all of the 10 other juvenile delinquency petitions which were filed against Whitmore.

As noted previously, a defendant may impeach a witness by showing that the witness has been arrested or charged with a crime if the arrest or charge "would reasonably tend to show that his testimony might be influenced by interest, bias or a motive to testify falsely." (*People v. Mason* (1963), 28 Ill. 2d 396, 401.) Also, the arrest or charge need not relate to crime with which the defendant is charged. (28 Ill. 2d 396, 401.) Additionally, the defendant does not have to show before examining the witness that the witness has been promised leniency or that the witness expects to receive favorable treatment. (*People v. Freeman* (1981), 100 Ill. App. 3d 478, 481.) "Further, defense counsel is entitled to inquire into such promises or expectations whether based on fact or imaginary." (100 Ill. App. 3d 478, 481.) However, the arrest(s), or charge(s), to be used against the witness must give rise to the inference that the witness has something to gain or lose by his testimony. (*People v. Phillips* (1981), 95 Ill. App. 3d 1013, 1020.) In other words, the

State must have some "leverage" over the witness.

In six of the 10 petitions with which we are presently concerned, the cases against Whitmore were closed. However, four of the 10 petitions filed against Whitmore were stricken with leave to reinstate. With respect to these four petitions Whitmore was charged as follows: (1) burglary (alleged date of occurrence November 12, 1980); (2) two counts of assault (alleged date of occurrence March 19, 1981); (3) burglary (alleged date of occurrence April 15, 1981); and (4) theft of property valued at less than $150 (alleged date of occurrence August 3, 1981).

The State may reinstate a cause which has been stricken with leave to reinstate if done within the limitation period. (See *People v. Reese* (1984), 121 Ill. App. 3d 977, 988.) The period of limitation for a felony prosecution is three years, while the period of limitation for a misdemeanor prosecution is one year and six months. Ill. Rev. Stat. 1981, ch. 38, par. 3—5(b).

The two burglary charges filed against Whitmore were felonies. The assault charges and the theft charge were misdemeanors. The defendant's retrial began on September 30, 1982, and ended on October 5, 1982. Therefore, the State could have reinstated the two burglary charges and the theft charge against Whitmore at the time of the defendant's retrial. We believe that "the jury was entitled to know the nature of [the witness'] criminal charges 'in order that it [could] have before it complete information so as to be better able to resolve the bias question.' [Citation.]" (*People v. Reese* (1984), 121 Ill. App. 3d 977, 988.) Since the "exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination" (*Davis v. Alaska* (1974), 415 U.S. 308, 316-17, 39 L. Ed. 2d 347, 354, 94 S. Ct. 1105, 1110), we hold that the defendant was denied his constitutional

right to confront the witnesses against him when the circuit court precluded him from questioning Whitmore with respect to the juvenile delinquency petitions which could have been reinstated against the witness at the time of the defendant's retrial.

In so holding, we are mindful of section 2—10(1)(c) of the Juvenile Court Act (Ill. Rev. Stat., 1982 Supp., ch. 37, par. 702—10(1)(c)), which was set forth earlier. We are also aware of this court's holding in *People v. Norwood* (1973), 54 Ill. 2d 253. In *Norwood*, this court examined section 2—8 of the Juvenile Court Act (Ill. Rev. Stat. 1969, ch. 37, par. 702—8), which provided:

> "(3) The records of law enforcement officers concerning all boys under 17 and all girls under 18 must be maintained separate from the records of arrests and may not be open to public inspection or their contents disclosed to the public except by order of the court or when the institution of criminal proceedings has been permitted under Section 2—7 or such a person has been convicted of a crime and is the subject of pre-sentence investigation or proceedings on an application for probation."

The defendant in *Norwood* sought to cross-examine a juvenile witness to impeach the witness on the ground that the witness had been promised leniency in exchange for his testimony. This court stated that the statute was "not to be construed as prohibiting access to the records of juvenile delinquents when those records are sought in order to impeach the credibility of the juvenile as a witness by showing a possible motive for testifying falsely." (*People v. Norwood* (1973), 54 Ill. 2d 253, 257.) We therefore held "that the statute did not bar the disclosure of the juvenile records of the witness insofar as they might be relevant to the defendant's claim that the witness's testimony was attributable to lenient treatment which he had received or had been promised." 54 Ill. 2d 253, 258.

When a defendant's liberty is at stake, as in the

present case, the credibility of a juvenile should be weighed as the credibility of any witness is weighed. Therefore, we do not construe section 2—10(1)(c) of the Juvenile Court Act to preclude a defendant from using a juvenile's court records, even when the juvenile has not been adjudicated a delinquent, "when those records are sought in order to impeach the credibility of the juvenile as a witness by showing a possible motive for testifying falsely." *People v. Norwood* (1973), 54 Ill. 2d 253, 257.

We note that the Supreme Court of Colorado in *People v. Bowman* (Colo. 1983), 669 P.2d 1369, was faced with a situation similar to that in the present case. In *Bowman*, a juvenile witness testifying for the State had been in trouble with the authorities in Chicago. Defense counsel argued to the trial court that evidence pertaining to the juvenile's trouble in Chicago would be relevant to the witness' possible motives for testifying against the defendant. The State informed the trial judge that the juvenile had never been adjudicated a delinquent, that the juvenile had been involved in a State-sponsored program because of a possible offense that was never the subject of judicial proceedings, and that a charge was pending against the witness for burglary. The court concluded that had the jury known that the witness faced a pending charge for burglary and, based on another possible offense, had been involved in an informal State program "the jurors could have evaluated the extent, if any, to which [the witness'] testimony *** might have been influenced by a desire to obtain favorable treatment from law enforcement authorities in his own cases." (669 P.2d 1369, 1376.) The court held that the restrictions imposed on the cross-examination of the juvenile witness violated the defendant's right to confront the witnesses against him.

In the present case, the jury heard Troy Whitmore's testimony, as well as the testimony of the other wit-

nesses. He testified that he heard one shot. However, the victim was shot three times. He also told the jury that he overheard conversations at the service station the afternoon of September 18, 1978. A Chicago police officer testified that he concluded from observing the victim and from a conversation that the victim had only been shot once. He told the jury that it did not rain the morning of the murder, yet Mark Sanders testified that when he saw the defendant at about 1 p.m. that afternoon the defendant was wet from the rain. Additionally, when he first talked to the police he told them "Eddie" shot Nimoh and that "Eddie" was driving a green station wagon. He then identified the defendant as "Eddie." No evidence was introduced to indicate that anyone besides Whitmore called Jessie Triplett "Eddie," nor was evidence introduced which indicated that he ever used the name "Eddie." Whitmore also told the jury that he knew defendant's car to be a green Lincoln Continental and not a green station wagon. Finally, he told the jury that he talked to the police because they threatened him with jail.

Every effort must be made to allow a jury to accurately assess a witness' reliability. We cannot speculate as to how the jury would have viewed Whitmore's reliability had they known that he was in the custody of the Department of Corrections at the time he testified against the defendant or that juvenile delinquency petitions which had been filed against him could have been reinstated. The State posed the following question to the jury in its rebuttal argument: "Why would Troy Whitmore lie about Jessie Triplett?" The jury was not allowed to hear the defendant's explanation of how this question could have been answered, and that was that the State was in a position, due to his background and the fact that he was in custody, to retaliate against him if it was displeased with his testimony. Therefore, the

jury was not able to accurately assess the witness' reliability. When the jurors listened to Troy Whitmore's testimony they were in the same position as if they had been asked to view an iceberg. They were exposed to only a small portion of reality.

Our society is not accustomed to sending a defendant to prison before that defendant has had a fair opportunity to face his accusers and have his accusers face an *effective* cross-examination, even when the accuser may be a juvenile. Because the defendant in the present case was precluded from cross-examining the juvenile witness as to the witness' possible bias, we hold that the defendant was denied his right to confront the witnesses against him when he was precluded from cross-examining the juvenile witness (1) as to the fact that the witness was in custody at the time he was testifying against the defendant and (2) regarding the juvenile delinquency petitions which could have been reinstated against the witness at the time of the defendant's retrial. This was, " ' "*** constitutional error of the first magnitude and no amount of showing of want of prejudice [could] cure it." *Brookhart v. Janis* [(1966), 384 U.S. 1, 3, 16 L. Ed. 2d 314, 316, 86 S. Ct. 1245, 1246].' *Smith v. Illinois* [(1968), 390 U.S. 129, 131, 19 L. Ed. 2d 956, 959, 88 S. Ct. 748, 750.]" (*Davis v. Alaska* (1974), 415 U.S. 308, 318, 39 L. Ed. 2d 347, 355, 94 S. Ct. 1105, 1111.) Therefore, we reverse his conviction and remand this cause for a new trial.

Since we are remanding this cause to the circuit court for a new trial, we will consider the defendant's second issue; namely, whether the circuit court erred when it failed to hold a suppression hearing to determine if the defendant's records which were admitted into evidence were tainted.

However, before we can decide this issue we must set forth a few additional facts. As stated earlier, Mark

Sanders took the police to the defendant's bank on or about October 4, 1978. The parties stipulated at the retrial that the first time the police attempted to obtain the defendant's bank records through legal process was on March 1, 1979, when a subpoena was issued for the records. However, the defendant has alleged that when he was first interrogated by the Chicago police on November 15, 1978, he was shown copies of his bank records.

Triplett made a pretrial motion to suppress his bank records at his original trial. (We cannot discern from the circuit court record of the retrial, or from the appellate court opinion involving the first trial (*People v. Triplett* (1981), 99 Ill. App. 3d 1077), whether a suppression hearing was held with regard to Triplett's motion to suppress at his original trial.) The defendant's motion was denied, and the records were admitted into evidence. On appeal, the appellate court affirmed the circuit court's order denying the motion. However, the appellate court reversed the defendant's conviction on other grounds and remanded the cause for a new trial. (*People v. Triplett* (1981), 99 Ill. App. 3d 1077.) Therefore, this court did not have an opportunity to review the lower courts' rulings.

At the defendant's retrial, he again moved to suppress the bank records. He also requested a "taint hearing." The circuit court denied both requests, and the records were admitted into evidence. On appeal, the appellate court affirmed the circuit court's order regarding the defendant's motion, reasoning that the bank records came to the police from an independent source, Mark Sanders. The appellate court therefore concluded that even though the police may have first obtained the defendant's bank records illegally, that illegality was attenuated because of the independent source. *People v. Triplett* (1984), 122 Ill. App. 3d 1159.

The defendant has asked us to determine whether the circuit court should have held a suppression hearing with respect to his motion to suppress his bank records. The State argues in its brief that the "defendant is collaterally estopped" from raising this issue before this court. The State also makes a somewhat vague argument that the defendant is precluded from raising this issue because the original appellate court opinion in this case established the law of the case.

The State's collateral-estoppel argument is inapplicable, "since it applies to relitigation at the trial level prior to appeal." (*People v. Webb* (1982), 109 Ill. App. 3d 328, 330.) In addition, the doctrine of the law of the case is inapplicable to this court in reviewing the decision of the appellate court. (*Vendo Co. v. Stoner* (1974), 58 Ill. 2d 289, 306.) Since this is the first time this case has been before us, we may review all matters which were properly raised and passed on in the course of the litigation. *Relph v. Board of Education* (1981), 84 Ill. 2d 436, 442.

The defendant in the present case claims that his bank records were illegally seized prior to the issuance of a lawful subpoena and that this unlawful seizure tainted the subsequent lawful seizure. At his retrial, the defendant requested a hearing on his motion to suppress the records which he alleged were seized illegally. This request was denied.

When a defendant before trial raises the question of the constitutional admissibility of evidence, the circuit court should grant the defendant a hearing on the motion to suppress. *People v. Sampson* (1980), 86 Ill. App. 3d 687, 693.

Unlike the appellate court, we will not speculate whether there was presubpoena access to the defendant's bank records. Because we believe that the circuit court should have held a hearing on the defendant's motion, we reverse the circuit court's order denying the

defendant's motion to suppress and his request for a hearing and remand for a suppression hearing. At that hearing the circuit court should determine: (1) if there was presubpoena access to the defendant's bank records; and (2) if there was presubpoena access, whether that access tainted the subsequent legal disclosure.

For the reasons set forth, we reverse the defendant's convictions for murder and armed robbery and remand the cause for a new trial and a suppression hearing with respect to the bank records.

*Reversed and remanded,*
*with directions.*