THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL COLEMAN *et al.*, Defendants-Appellants.

First District (4th Division)   No. 1—88—3514

Opinion filed November 27, 1991.

Rita A. Fry, Public Defender, of Chicago (Millicent Willis, Assistant Public Defender, of counsel), for appellants.

Jack O'Malley, State's Attorney, of Chicago (Kathleen F. Howlett, Special Assistant State's Attorney and Renee Goldfarb and Sherry L. Biedar, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Defendants, Daniel Coleman and Anthony Mason, were charged by indictment with six counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14), one count of aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4), three counts of aggravated kidnapping (Ill. Rev. Stat. 1985, ch. 38, par. 10—2), two counts of kidnapping (Ill. Rev. Stat. 1985, ch. 38, par. 10—1), and one count of unlawful restraint (Ill. Rev. Stat. 1985, ch. 38, par. 10—3). Defendant Coleman received a jury trial. Defendant Mason was tried simultaneously by the court. Both defendants were found guilty of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14) and sentenced to 20 years in the Illinois Department of Corrections.

The following issues are before this court for review: (1) whether defendant Coleman should be granted a new trial because the State forced him to be tried by a jury; (2) whether the People proved beyond a reasonable doubt that defendant Mason was accountable for defendant Coleman's actions; (3) whether the cumulative effect of errors at trial prejudiced defendants so as to require that they be granted a new trial; (4) whether comments made by the prosecutor during closing argument constitute reversible error; and (5) whether the trial court abused its discretion by sentencing defendants to 20 years' incarceration.

We affirm in part and reverse in part and remand.

BACKGROUND

On Friday, October 17, 1986, at approximately midnight, Anthony Mason, Daniel Coleman, and three of their friends went to the Famous Lounge, a bar located in Chicago, to celebrate Mason's birthday. Coleman met Y.R., the complainant, at the bar. The couple danced several times during the evening. The bar closed at approximately 3 a.m. At that time, Coleman invited Y.R. to breakfast.

As the couple left the bar, Coleman introduced Y.R. to Mason, Loretta Buckner, and Joe and Ed Bruce. Mason, Y.R., Coleman, and Coleman's friends all got into the car. Coleman then drove Loretta Buckner and Joe and Ed Bruce to their respective destinations. Mason and Y.R. remained in the car. Coleman then stated that he had to drive Mason to 47th Street. However, Coleman instead drove to the Museum of Science and Industry (hereinafter Museum) at East 56th Street.

Complainant testified that after arriving at the Museum, Coleman ordered her to have sexual intercourse with both him and Mason. She stated that she refused to have intercourse with defendants and that she told Coleman she would "get out and walk." Complainant further testified that she attempted to get out of the car and that Coleman "grabbed" the back of her head in order to prevent her from leaving the car. The witness then stated that both defendants beat her and that Mason held her feet while Coleman pulled off her necklace, attempted to choke her, and separated her ear lobes into two parts by ripping her earrings from her pierced ears. She further testified that defendants removed her from the seat of the car and locked her in the trunk of the car. Complainant also told the court that she injured her hand in the process of attempting to prevent defendants from locking her in the trunk.

Complainant then testified that defendants drove the car to the rear of the Museum and let her out of the trunk near the lagoon. She stated that after she got out of the trunk, Coleman ripped her blouse and suggested to Mason that they "shoot" her. Thereafter, Coleman pushed her down on the ground, unfastened his pants, and forced his penis into her mouth while Mason pushed a metal object against the back of her head. The witness stated that defendants then threw her into the lagoon, after they heard someone coming, and she later crawled onto the embankment and was assisted by a police officer.

Mr. Geffrey Gibbons testified that he saw defendants attack complainant. Gibbons told the court that he parked his car in the Museum parking lot at approximately 4:30 a.m. on October 17, 1986. At that

time, he saw two men leaning on the trunk of a car and the trunk was moving up and down as if someone were trying to get out. Gibbons further testified that he reported the incident to the police and they arrived shortly thereafter.

After being interviewed by police, Gibbons overheard that a weapon was involved in the assault. He went back to the Museum at daybreak and recovered a caulking gun wrapped in a towel near the lagoon. He then gave the caulking gun to the police. Complainant was unable to identify the caulking gun as the object that defendant Coleman pressed against the back of her head. However, the court admitted the caulking gun into evidence over the objection of the defense. The trial court held that the caulking gun was offered as corroborative evidence of complainant's statement.

After the assault, Y.R. was taken to the Bernard Mitchell Hospital of the University of Chicago Medical Center. She was examined and treated by Dr. Sari Hart. Dr. Hart observed that Y.R. was covered with leaves, dirt, and gravel, and that her clothing had been partially removed. Dr. Hart also discovered that she had numerous abrasions on her face, neck, chest, knees, hands, right buttock, and right thigh. In addition, her right hand was swollen. Dr. Hart asked Y.R. what happened to her, and Dr. Hart later testified that complainant responded in the following manner:

> "She said that she had been at a party, that she had been leaving the party and was offered a ride home by some people at the party, that she had gotten in the car, they had dropped some of the people off at home. She said that after they dropped other people at home they stopped behind the Museum of Science and Industry, that there were two men still in the car, that they had assaulted her, hit her with fists and open hands, slapped her, that they had then put her in the trunk of the car and driven to an unknown—to her an unknown place, taken her out of the trunk of the car, thrown her into a lagoon, continued to beat her up, punched her, kicked her, threw her on the ground. She said one of the assailants had forced his penis into her mouth but that the person who did that did not ejaculate in her mouth and that she had been in the water struggling with this person who had put his penis in her mouth, that the other person assailant then left. She was still struggling with the one man when the police came upon them."

Dr. Hart further testified that the physicians in the emergency room at Bernard Mitchell Hospital routinely ask patients to describe the manner in which they were injured. A patient's explanation enables

the attending physician to determine which injuries to look for during a physical examination and which latent injuries the patient should be tested for.

After being treated at the hospital, Y.R. was taken to the police station where she was photographed and interviewed. She moved out of town approximately one month after the assault. She had no additional contact with the Chicago police department or the office of the State's Attorney until she was summoned to appear in court.

Over his counsel's objections, the trial court allowed defendant Coleman to be tried by jury pursuant to section 115—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 115—1). Coleman testified that a different series of events occurred on the night of October 17, 1986. He stated that complainant wanted more liquor after leaving the bar. They drove to a liquor store, but it had already closed. Defendant Coleman further testified that he and complainant purchased cocaine after leaving the liquor store and before driving to the Museum. He stated that complainant became nervous because it was taking him a long time to freebase the cocaine and that complainant grabbed the cocaine and attempted to flee the car. The witness further stated that he and defendant Mason attempted to push complainant back into the car because she was screaming. He stated that he instructed Mason to place complainant in the trunk of the car because they were unable to force her back into the car seat. Coleman further stated that he and Mason then placed complainant in the trunk of the car and drove the car behind the Museum to the lagoon. Coleman then told the court that he and Mason lifted complainant out of the trunk and took a pipe to the lagoon in order to obtain the water which they needed to smoke the cocaine. He further testified that shortly thereafter the police came and that he responded by throwing the paraphernalia into the lagoon, pushing complainant into the lagoon, and jumping into the lagoon himself before surrendering to the police.

Defendant Mason received a bench trial. His version of the series of events which occurred on the night in question was substantially similar to defendant Coleman's testimony. Mason testified that he was asleep in the back seat of the car and that he awoke as complainant was attempting to leave the vehicle. He further testified that he helped Coleman put her into the trunk of the car in order to prevent her from leaving. He stated that on the way to the rear of the Museum, Coleman told him that he had some cocaine to freebase. According to the witness, once they reached the rear of the Museum, Coleman instructed him to be quiet while he freebased the cocaine.

Mason testified that he heard someone yell the word "police" and that he and Coleman responded by running away. Mason stated that he jumped into the lagoon and swam under a bridge where he hid for about 20 minutes. Thereafter, he got out of the water and boarded a bus where he was arrested.

Mason was then taken to the police station where he was interviewed by Assistant State's Attorney Frank Marek and a police detective. The assistant State's Attorney testified that he prepared a statement and that Mason read the statement, admitted that it was accurate, and then signed it. The statement reads as follows:

"Daniel and the lady had an argument. She refused to have sex with Daniel and then Daniel told Anthony Mason to help him put her in the trunk of the car. She struggled but the two men were able to force her into the trunk. Daniel slammed her hand in the trunk, she pulled her hand away and then both men closed and locked the trunk. Daniel drove to the wooded area in the lagoon directly behind the museum. Daniel parked the car and both men removed the lady from the trunk. The lady began to fight and Daniel started to tear her clothing from her while Anthony Mason held her arms. Daniel forced her to the ground by the lagoon, stood directly over her, unzipped his pants and said suck this. Anthony Mason could not see whether Daniel Coleman ever put his penis inside the lady's mouth. The lady was struggling while Daniel stood over her and Daniel was holding her by the arm. Anthony Mason heard the police drive up at which time he and Daniel ran from the scene on foot. Anthony Mason swam through the lagoon and hid under the bridge for fifteen to twenty minutes and then walked to a CTA bus."

Defendant Mason later testified that he signed the statement without reading it, because Assistant State's Attorney Marek told him that if he signed the statement he would receive a shorter incarceration sentence. In addition, Marek admitted at trial that the statement was a written synopsis and that the conversation was not recorded electronically or by a stenographer. He further conceded that a stenographer was available, but not requested, and that he may have used leading questions.

The State rebutted defendant Mason's case with a stipulation that Detective John Mulvey would testify that Mason gave a false statement on the day of his arrest. Detective Mulvey was prepared to testify that he interviewed Mason at 7:30 a.m. on the date of the inci-

dent and that Mason stated he was minding his own business when two men beat him, robbed him, and threw him into a lagoon.

During closing arguments, complainant became emotional. The judge ordered the State to instruct her to compose herself. The court stated that if she failed to do so she would have to leave the courtroom. Complainant left the courtroom.

After closing arguments, the jury found defendant Coleman guilty of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14), and the trial court found defendant Mason guilty of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14).

Next, the trial court heard evidence in aggravation and mitigation. The People presented evidence in aggravation that defendant Mason was convicted for the knowing, willful, and unlawful possession of stolen checks in 1984, and that he committed the immediate offense while he was on probation for the aforementioned conviction. The defense presented evidence in mitigation in the form of defendants' family members and friends. After hearing evidence in aggravation and mitigation, the trial judge stated: "[T]his is a terrible crime, this brutal treatment of this lady. I don't know what possessed these men, they acted like savages." The court sentenced both defendants to 20 years in the Illinois Department of Corrections. This appeal followed.

OPINION

I

First, defendant Coleman contends that he must be granted a new trial because the State's statutory right to demand a jury trial was declared unconstitutional. The State agrees.

In the instant case, Coleman was tried by jury. Prior to the trial, the State requested a jury trial for Coleman pursuant to section 115—1 of the Code of Criminal Procedure. (Ill. Rev. Stat. 1985, ch. 38, par. 115—1.) Coleman objected to the State's request. However, the State's motion was granted.

Section 115—1 of the Code of Criminal Procedure provides as follows:

> "Method of Trial. *** [I]n a criminal prosecution where the offense charged is first degree murder, a Class X felony, criminal sexual assault or a felony violation of the Cannabis Control Act or the Illinois Controlled Substances Act both the State and the defendant waive such jury trial in writing." Ill. Rev. Stat. 1987, ch. 38, par. 115—1.

■ Our supreme court has held that "[t]he dimension of our *** right to a trial by jury under the 1870 constitution *** clearly encompasse[s] the right of an accused to waive trial by jury." (*People ex rel. Daley v. Joyce* (1988), 126 Ill. 2d 209, 222.) Recently, the supreme court has held that "the right to waive a jury trial is constitutionally based and is a personal right reserved for the accused's informed decision." (*People v. Gersch* (1990), 135 Ill. 2d 384, 393.) "[W]here individual errors made by a trial court would not merit reversal alone, the cumulative effect of the errors may deprive defendant of a fair trial. Under such circumstances, due process and fundamental fairness require that a cause be remanded for retrial." *People v. Johnson* (1991), 215 Ill. App. 3d 713, 734-35.

Accordingly, we find that defendant Coleman's conviction for aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12–14) should be reversed and the cause remanded for a new trial.

## II

Second, defendant Mason contends that he was not proved guilty of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12–14) beyond a reasonable doubt because the State failed to establish that he was accountable for defendant Coleman's actions. Specifically, Mason maintains that the State failed to prove that he had the requisite specific intent to commit the offense. The State maintains that it proved Mason guilty beyond a reasonable doubt.

In *People v. Trimble* (1991), 220 Ill. App. 3d 338, we summarized the law that is applicable when a party challenges the sufficiency of the evidence. This court made the following statement:

> "When faced with a challenge to the sufficiency of the evidence, it is not the function of a reviewing court to retry defendant. '[I]t is entirely within the province of the fact finder to determine the credibility of witnesses, the amount of weight to accord their testimony, and the appropriate inferences to be drawn therefrom.' [Citations.] The relevant inquiry is ' "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt".' (Emphasis in original.) [Citations.] '[A]fter a defendant has been found guilty, "*** *all of the evidence* is to be considered in the light most favorable to the prosecution." ' (Emphasis in original.) [Citations.] '[A] guilty verdict shall not be disregarded on review unless it is inconclusive, improbable,

unconvincing, or contrary to human experience.' " *Trimble*, 220 Ill. App. 3d at 350.

See also *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; *People v. Schorle* (1990), 206 Ill. App. 3d 748, 758-59.

According to section 5—2 of the Criminal Code of 1961, a person is legally accountable for the conduct of another. The act states, in pertinent part, as follows:

"(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees, or attempts to aid, such other person in the planning or commission of the offense." Ill. Rev. Stat. 1985, ch. 38, par. 5—2(c).

"In establishing legal accountability for the acts of another the State is deemed to have met its burden of proving the specific intent to promote or facilitate the commission of the crime where it proves 'beyond a reasonable doubt that defendant shared the criminal intent of the principal, or that there was a community of unlawful purpose.' " (*People v. Gray* (1980), 87 Ill. App. 3d 142, 147, quoting *People v. Hill* (1977), 53 Ill. App. 3d 280, 284.) In addition, "proof of community of purpose or common design need not be expressly stated but may be drawn from the circumstances surrounding the commission of the act [citations], which may include an accused's presence at the commission of the crime without disapproving or opposing it." (*Gray*, 87 Ill. App. 3d at 147.) A defendant may even be held accountable for aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—14), when he was aware that the commission of the offense was taking place even though there is no evidence that he actually participated in the crime. *People v. Tyler* (1979), 78 Ill. 2d 193, 196-97; see *Gray*, 87 Ill. App. 3d at 147.

■ The trial judge concluded that defendant Mason was "working in concert with Coleman to put the lady in the trunk and he held her while Coleman performed the act that is charged in the indictment." The record shows that Mason aided Coleman and that there was a community of unlawful purpose between defendants. Mason held complainant's feet while Coleman pulled her necklace off, attempted to choke her, and ripped her earrings from her ears. Mason also helped Coleman remove her from the seat of the car and lock her in the trunk of the car. Mason also held a metal object against complainant's head while Coleman forced his penis into her mouth. Upon viewing the evidence in the light most favorable to the prosecution, we believe that the fact finder could have found beyond a reasonable

doubt that Mason had the requisite intent. Accordingly, we find that defendant Mason was proved guilty beyond a reasonable doubt.

## III

Third, defendants allege that their convictions should be reversed because they were substantially prejudiced by the cumulative effect of the errors made by the trial court. Defendants allege that the trial court made the following errors: (1) receiving the caulking gun into evidence; (2) admitting the testimony of Dr. Sari Hart; (3) limiting the defense attorney's cross-examination of complainant concerning her knowledge of the progress of this case and her communication with the prosecution; and (4) permitting complainant's emotional displays during the People's closing arguments. In addition, defendant Coleman maintains that he was prejudiced by the court's admission of testimony concerning defendant Mason's arrest.

We need only address this issue with respect to defendant Mason, because we have already ruled that defendant Coleman is entitled to have his conviction reversed and the cause remanded for a new trial.

■■ First, we find that the trial court did not err in admitting the caulking gun into evidence. "The general rule is that physical evidence may be admitted provided there is proof to connect it with the defendant and the crime." (*People v. Free* (1983), 94 Ill. 2d 378, 415; see *People v. Howard* (1991), 209 Ill. App. 3d 159, 178; *People v. Nightengale* (1988), 168 Ill. App. 3d 968, 972.) "If an object is shown to be connected with a defendant, admissibility does not require a showing that the object was actually used in the offense charged as long as it is shown that the object is at least suitable for the commission of the crime." (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §401.4, at 135 (5th ed. 1990), citing *People v. Jones* (1961), 22 Ill. 2d 592.) "The mere fact that evidence may tend to prejudice a defendant does not render that evidence *per se* inadmissible. The issue is whether the prejudice to the defendant is outweighed by the probative value of the evidence." *Nightengale*, 168 Ill. App. 3d at 973.

We believe the caulking gun was properly admitted to corroborate the complaining witness' testimony that a hard metal object was placed to her head. The evidence is not significant; however, it is relevant to show that this was the hard metal object. In addition, we find that there is sufficient proof to link the caulking gun to defendant Mason and the crime. Although complainant could not identify the evidence, Gibbons, a witness to the crime, found the evidence in the area where the event occurred. Also, the object was found very early in the morning where there would have been very few people between

the time of the event and the time of the finding of the caulking gun. The State is not required to show that the evidence was actually used in the offense, just that it was suitable for the commission of the crime. Upon review, we find that the trial court did not err in finding that the evidence was connected to the crime.

█ With respect to the assertion that the trial court erred when it admitted Dr. Hart's testimony, we find that her testimony was properly admitted. The Illinois Supreme Court made the following ruling in *People v. Gant* (1974), 58 Ill. 2d 178:

" 'Statements of a presently existing bodily condition made by a patient to a doctor consulted for treatment are almost universally admitted as evidence of the facts stated ***. Although statements to physicians are not likely to be spontaneous, since they are usually made in response to questions, their reliability is assured by the likelihood that the patient believes that the effectiveness of the treatment he receives may depend largely upon the accuracy of the information he provides the physician. ***

'The exception might be taken one step further to encompass statements made to a physician concerning the cause or the external source of the condition to be treated.' " *Gant*, 58 Ill. 2d at 186, quoting E. Cleary, McCormick on Evidence §292 at 691 (2d ed. 1972).

See *People v. Camel* (1974), 59 Ill. 2d 422, 438.

In the instant case, Dr. Hart interviewed complainant in the hospital, asking her to state what happened. Complainant gave a detailed account of her ordeal. Dr. Hart testified that the purpose of asking complainant what happened was to better enable her to properly diagnose and treat any injuries.

We find that the evidence in this case so clearly establishes defendant Mason's guilt that any error with respect to the admission of Dr. Hart's testimony concerning her conversation with complainant constituted harmless error. See *People v. Camel* (1974), 59 Ill. 2d 422, 438; *People v. Gant* (1974), 58 Ill. 2d 178, 186; *People v. Walton* (1976), 43 Ill. App. 3d 74, 78.

█ Regarding the issue of whether the trial court improperly limited the defense attorney's cross-examination of complainant, we find that the trial court did not err. In *People v. Triplett* (1985), 108 Ill. 2d 463, our supreme court made the following ruling:

"The sixth amendment provides in pertinent part:

'In all criminal prosecutions, the accused shall enjoy the right \*\*\* to be confronted with the witnesses against him \*\*\*.' U.S. Const., amend. VI.

This right has been made obligatory on the States through the fourteenth amendment [citation] and includes the right to cross-examine a witness as to the witness' biases, interests, or motives to testify." (*Triplett*, 108 Ill. 2d at 474.)

However, the scope of cross-examination within a criminal case is within the sound discretion of the trial court. (*People v. Santiago* (1987), 161 Ill. App. 3d 634, 642.) "Although the circuit court has no discretionary power to deny the defendant this right, the circuit court does have broad discretion to preclude repetitive or unduly harassing questioning on these matters." (*Triplett*, 108 Ill. 2d at 475.) A trial court's decision to limit cross-examination will be reversed only if there is an abuse of discretion which is prejudicial to the defendant. *People v. Wilkerson* (1981), 87 Ill. 2d 151, 156-57; *Santiago*, 161 Ill. App. 3d at 642.

In the instant case, we find that the trial court properly restricted defense counsel's cross-examination of complainant because the line of questioning did not relate to her possible biases, interests, or motives to testify. We find that defense counsel's questions concerning complainant's knowledge of the progress of the case and the nature of her communication with the office of the State's Attorney were beyond the scope of cross-examination.

Defendant's reliance upon *People v. Triplett* (1985), 108 Ill. 2d 463, and *People v. Wilkerson* (1981), 87 Ill. 2d 151, to support his contention concerning the cross-examination of complainant is inappropriate because both cases are distinguishable from the case at bar. In *Wilkerson*, the defense was prohibited from cross-examining a witness. Several welfare fraud and felony-theft charges were pending against the witness, and the defense sought to convey to the jury, through cross-examination, that the witness might attempt to "curry favor with the prosecutor of those charges by slanting her story in the *Wilkerson* case to suit the State." (*Wilkerson*, 87 Ill. 2d at 155.) This court ruled that the trial court violated the defendant's constitutional right to cross-examine the witness as to her interests, biases, and motives to testify.

Similarly, in *People v. Triplett* (1985), 108 Ill. 2d 463, the defense sought to cross-examine a witness concerning his "contacts" with the police, the fact that he was in the custody of the Department of Corrections as an adjudicated delinquent at the time that he testified against the defendant, and 10 juvenile delinquency petitions filed

against him. The supreme court held that the defense should have been allowed to cross-examine the witness regarding the fact that he was in custody because cross-examination might have revealed that the witness was biased. In addition, the court held that the defendant was denied his constitutional right to confront the witness when the court precluded the defense from questioning the witness concerning his prior juvenile delinquency petitions which could have been reinstated against him at the time he testified against the defendant. The court reasoned that the jury was entitled to know the nature of the criminal charges against the defendant in order to determine whether or not the witness was biased.

In both of the above cases relied upon by defendant, our supreme court held that a defendant has a right to cross-examine a witness concerning the witness' possible biases and motives to testify, where questions on cross-examination concern criminal charges pending against the witness, criminal charges which could be reinstated against the witness, or the current incarceration of the witness.

*Triplett* and *Wilkerson* are distinguishable from the case at bar, because the witnesses in the aforementioned cases were incarcerated or had criminal charges pending against them or there were criminal charges which could be reinstated against them at the time they testified. In the instant case, there were no criminal charges pending against the complaining witness when she testified for the People, and there is no evidence in the record that prior criminal charges against her could be reinstated at the time she testified. Furthermore, complainant was not in custody when she testified against defendant Mason.

Therefore, we rule that defense counsel's questions concerning complainant's knowledge of the progress of the case and the nature of her communication with the State's Attorney's office were beyond the scope of cross-examination. In addition, the court properly sustained the State's objection to the defense's attempt to cross-examine complainant concerning the extension of the trial date because she was unavailable to testify. The record shows that complainant had not been informed of court proceedings immediately after the arrest and that she moved out of town because she was afraid of defendants. Accordingly, we find that the trial court did not abuse its discretion or prejudice defendant Mason by limiting the scope of cross-examination. Mason should not prevail on this claim.

■ With respect to the contention that the trial court erred when it permitted emotional displays by complainant in the court room which prejudiced defendant Mason, we find that the trial court consid-

ered only competent evidence. The People maintain that Mason waived this argument because his brief fails to cite any authority to support his argument and that his brief therefore violates Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)) and our holding in *People v. Shaw* (1985), 133 Ill. App. 3d 391, 404.

Supreme Court Rule 341(e)(7) makes the following relevant provision:

> "(e) Appellant's Brief. The appellant's brief shall contain the following parts in the order named:
>
> * * *
>
> (7) Argument, which shall contain the contentions of the appellant and the reasons therefor, *with citation of the authorities* and the pages of the record relied on. *** *Points not argued are waived ***.*" (Emphasis added.) 134 Ill. 2d R. 341(e)(7).

In *People v. Shaw* (1985), 133 Ill. App. 3d 391, we held that the defendant waived his right to appellate review of an issue because his argument, which consisted of a single sentence in his brief, was not presented in compliance with Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)). In *Shaw*, we reasoned that the defendant failed to present a supporting argument and failed to cite any cases in support of his position.

*Shaw* is distinguishable from the instant case. In *Shaw*, the defendant failed to cite relevant case law and to present an argument in support of his allegation. "Points not argued are waived ***." (134 Ill. 2d R. 341(e)(7).) In the instant case, defendant has made an argument, but he fails to cite any authority in support of his allegation. Accordingly, we find in the instant case that defendant Mason has not waived his right to appellate review of this issue.

■ Upon addressing the merits of defendant Mason's contention, we find that the trial court considered only competent evidence in determining his guilt. In a bench trial, there is a presumption that the trial court considered only competent evidence. (*People v. Ticey* (1991), 214 Ill. App. 3d 1043, 1050.) " '[T]his presumption may be rebutted only when the record affirmatively shows the contrary.' " (*Ticey*, 214 Ill. App. 3d at 1050, quoting *People v. Bradford* (1989), 187 Ill. App. 3d 903, 923; see *People v. Sanchez* (1990), 206 Ill. App. 3d 90, 106.) In the instant case, nothing in the record suggests that the court considered complainant's emotional outbursts in determining defendant Mason's guilt. In fact, the record shows that the trial judge ordered the People to instruct complainant to either compose herself or leave the courtroom. During closing arguments, complainant did

leave the courtroom after she became emotional. Thus, defendant Mason has failed to overcome the presumption that the trial court considered only competent evidence.

Finally, defendant Coleman contends that he was prejudiced by the trial court's admission of testimony regarding defendant Mason's arrest. We need not address this issue because we have already ruled that Coleman is entitled to have his conviction reversed and the cause remanded for a new trial.

■ "The whole can be no greater than the sum of its parts ***." (*People v. Albanese* (1984), 102 Ill. 2d 54, 82-83.) In the instant case, defendant Mason has failed to demonstrate that the cumulative effect of the trial court's errors prejudiced him so as to warrant reversal. Accordingly, we find that the cumulative effect of the trial court's errors did not deny Mason a fair trial.

## IV

Next, defendant Coleman alleges that the State made several improper comments during closing argument and that these comments constitute reversible error. We will not address this issue since Coleman is entitled to have his conviction reversed and the cause remanded for a new trial.

## V

Finally, defendants contend that the trial court abused its discretion by sentencing them to 20 years in the Illinois Department of Corrections despite the evidence of rehabilitative potential and lack of criminal background. Furthermore, they allege that the judge ignored evidence in mitigation.

We need only address this issue with respect to defendant Mason because we have ruled that Coleman is entitled to have his conviction reversed and the cause remanded for a new trial.

"In determining an appropriate sentence, '[t]he nature of the crime, protection of the public, deterrence and punishment are relevant as well as defendant's rehabilitation prospects and youth.'" (*People v. Trimble* (1991), 220 Ill. App. 3d at 355, quoting *People v. Whitehead* (1988), 171 Ill. App. 3d 900, 908.) When determining a sentence, the trial court should consider the rehabilitative potential of the defendant. (*People v. Hayes* (1979), 70 Ill. App. 3d 811, 831.) However, "the trial court is not required to give greater weight to that consideration than it is to give to the seriousness of the offense." *Hayes*, 70 Ill. App. 3d at 831.

"The trial judge's determination of an appropriate sentence must be given great deference and weight, because the trial judge is in the best position to make a sound determination regarding punishment. [Citations.] There is a strong presumption that a trial court has considered any evidence of mitigation brought before it. [Citations.] Furthermore, *** a court of review will not disturb a defendant's sentence absent an abuse of discretion." (*Trimble* (1991), 220 Ill. App. 3d at 355-56.) "[W]e will not substitute our judgment for that of the trial court merely because we would have balanced the appropriate factors differently if the task of sentencing had been ours." (*People v. Cox* (1980), 82 Ill. 2d 268, 280.) A court of review should not reduce a sentence where the sentence imposed by the trial court is within the statutory limitation. See *People v. Lambrechts* (1977), 69 Ill. 2d 544, 559.

■ In the instant case, defendant Mason has failed to demonstrate that the trial court abused its discretion. The trial court considered the seriousness of the crime. The trial court stated: "[T]his is a terrible crime, this brutal treatment of this lady ***. I don't know what possessed these men, they acted like savages." The record reflects that Mason held complainant's feet while Coleman pulled her necklace off, attempted to choke her, and ripped her earrings from her ears. Mason also helped Coleman remove complainant from the seat of the car and lock her in the trunk of the car. Mason also held a metal object against complainant's head while Coleman forced his penis into her mouth. Complainant sustained many injuries as a result of this incident, including numerous abrasions on her face, neck, chest, hands, right buttock, and right thigh.

The court also heard evidence in aggravation and mitigation. The evidence in mitigation consisted of the testimony of Mason's friends. The evidence in aggravation showed that in 1984 he was convicted for the knowing, willful, and unlawful possession of stolen checks. Mason committed the immediate offense while on probation for the aforementioned conviction.

Mason was sentenced to 20 years' imprisonment. The trial judge was in the best position to fashion an appropriate sentence. The trial judge heard the testimony of all of the witnesses, the court properly considered factors in aggravation and mitigation, and the trial court properly considered the seriousness of the crime. Moreover, the court's sentence was within the range prescribed by statute. Aggravated criminal sexual assault is a Class X felony. (Ill. Rev. Stat. 1985, ch. 38, par. 12—14.) The sentence for a Class X felony must be no fewer than 6 years and no more than 30 years. (Ill. Rev. Stat. 1985,

ch. 38, par. 1005—8—1(a)(3).) Accordingly, we will not modify defendant Mason's sentence.

For the foregoing reasons, we affirm defendant Mason's conviction and his sentence, and we reverse defendant Coleman's conviction and remand the cause for a new trial.

Affirmed in part; reversed in part and remanded.

JIGANTI, P.J., and LINN, J., concur.