2020 IL App (1st) 171964

No. 1-17-1964

Order filed November 25, 2020

Third Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 09 C5 50429 |
| | ) | |
| EDDIE MYLES, | ) | Honorable |
| | ) | Colleen Ann Hyland, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justices Ellis and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant Eddie Myles appeals from the circuit court's second-stage dismissal of his petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)). On appeal, defendant contends he is entitled to an evidentiary hearing on his claim that trial counsel was ineffective for failing to discover that a witness for the State had pending charges for fraud and bribery and failing to use that information to impeach her. For the following reasons, we reverse and remand.

¶ 2    Defendant was charged by information with one count of robbery, predicated on taking money from Maryanne Koll, a person 60 years or older, by using or threatening imminent force. See 720 ILCS 5/18-1 (West 2008). We recount the facts from defendant's 2010 jury trial only to the extent necessary to resolve the issue on appeal.

¶ 3    Koll testified that on July 23, 2009, when she was 66 years old, she went to a Jewel grocery store in Countryside and withdrew $200 at a bank located in the store. Koll placed the money in a white envelope inside her purse, which she put in the child seat of her grocery cart. As Koll left the store, defendant ran into her left shoulder and removed the envelope from her purse. Koll yelled, "give me back my money," "help," and "I am being robbed." Defendant fled, throwing the envelope containing Koll's money on the street. Koll retrieved the envelope of money, and 10 minutes later, police brought defendant to Koll. She identified him as the offender. On cross-examination, Koll testified that she did not notice if defendant had a pharmacy bag or portfolio in his hands.

¶ 4    Sheila LaRoche testified that she witnessed the robbery, called the police, and pursued defendant with several men. As they approached defendant, he went down on one knee, raised his hands, and said, "I give." Police took defendant into custody. On cross-examination, LaRoche testified that she did not notice anything in defendant's hands.

¶ 5    Countryside police officer Paul Klimek testified that he arrested defendant. On cross-examination, Klimek testified that defendant had drawings with him, but did not recall if defendant was carrying a Jewel bag. Klimek also did not recall whether, after arresting defendant, he brought medication to defendant's wife at her residence.

¶ 6    Defendant testified that he had prior convictions for theft and driving under the influence. On the date of the incident, he went to Jewel to pick up his wife's medication and had his art

portfolio with him. After picking up the medication, he purchased apple turnovers at the self-checkout. As defendant exited the store, he accidentally bumped Koll. Defendant apologized and bent to retrieve some papers that Koll dropped, and Koll started screaming that she was "being robbed." Defendant denied pushing Koll or removing an envelope from her bag. He stated that he was afraid he would be arrested because he was a black man in a white community in an incident with a white woman.

¶ 7    Defendant walked away without the envelope, but LaRoche ran past him and told three men to stop him because he had robbed someone. Defendant stopped and asked, "[w]hat are you talking about?" LaRoche said she knew what happened at Jewel and that police were on their way. Defendant denied going down on one knee and stating, "I give." After defendant's arrest, he asked Klimek to bring his wife's medication to her, which Klimek did.

¶ 8    The jury found defendant guilty of robbery. Defendant filed several *pro se* posttrial motions, including one alleging ineffective assistance of trial counsel. According to the motion, defendant's attorneys initially advised him that they had his Jewel receipt and drawing pad, which had been inventoried by the police, and said they would show those items to the jury during closing arguments. When defendant asked to see the receipt and his drawings during a break from trial, one of the attorneys stated that he had subpoenaed Jewel, which did not have a receipt for the transaction. Defendant maintained that counsel lied to him and that if the jurors had seen the receipt and drawing pad, they would know that Koll and LaRoche were lying because they testified that he did not have anything in his hands. At the hearing on the motion, defendant also claimed that if he knew that the receipt and drawing pad were not in court, he would have asked for a continuance rather than going to trial.

¶ 9     The trial court denied defendant's motion, finding that the issues defendant raised related to trial strategy. The court noted that it observed defendant's attorneys, who were "well prepared," "diligent," and "possessed excellent trial skills." Moreover, the jury had the opportunity to consider evidence of the art portfolio through Klimek's and defendant's testimonies.

¶ 10     Following a hearing, the court sentenced defendant to 20 years' imprisonment as a Class X offender and denied his motion to reconsider sentence.

¶ 11     On direct appeal, defendant argued that the trial court's inquiry into his *pro se* claim of ineffective assistance was inadequate, the trial court should have appointed counsel to represent him on his claim, and his sentence was excessive. We affirmed. See *People v. Myles*, 2013 IL App (1st) 111467-U.

¶ 12     On June 6, 2013, defendant filed a *pro se* postconviction petition asserting that the State failed to disclose, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), that Koll had pending federal charges at the time of the robbery and when she testified against him. Defendant attached copies of Koll's federal information and a Department of Justice press release about her conviction and sentence. According to the exhibits, Koll was charged with fraud and conspiracy to commit bribery in 2007. Koll, who was authorized by the Illinois Department of Public Health to teach food service sanitation classes and administer state certification exams, allegedly accepted at least $96,930 in return for arranging fraudulent public health certificates for at least 531 individuals. In September 2011, Koll was convicted of conspiracy to commit bribery and sentenced to 30 months' imprisonment.

¶ 13     The circuit court advanced defendant's petition for second-stage proceedings and appointed counsel, who filed two supplemental petitions. The supplement, filed on July 31, 2015,

restated defendant's allegation that the State failed to disclose Koll's pending federal criminal charges. Defendant attached an affidavit from trial counsel, who averred that the prosecution did not disclose that information and that, had he known, he would have used it to impeach Koll. The supplement filed on June 7, 2016, alleged, in relevant part, that trial counsel was ineffective for failing to investigate Koll's background where that investigation would have led to information to impeach her credibility.

¶ 14    The State moved to dismiss defendant's postconviction petition. Relevant here, the State asserted that "mere arrests are impermissible for impeachment," and thus, defendant could not establish he was prejudiced by trial counsel's failure to investigate Koll.

¶ 15    On July 28, 2017, the circuit court granted the State's motion to dismiss defendant's postconviction petition. Regarding defendant's *Brady* claim, the court stated that Koll's federal charges were immaterial, since that information would not have been admissible at trial as impeachment where the prosecutors were not involved in Koll's case. Even if the charges were material, the outcome of the trial would not have been different because an independent eyewitness testified against defendant. Regarding the ineffective assistance claim, the court found that there was "not a reasonable probability that the pending federal case would have changed the final result," and therefore, defendant failed to establish prejudice.

¶ 16    On appeal, defendant argues that he is entitled to an evidentiary hearing on his claim that trial counsel was ineffective for failing to discover Koll's pending fraud and bribery charges and failing to use that information to impeach her. The State responds that defendant failed to make a substantial showing of ineffective assistance where the proposed impeachment would have been improper and would not have affected the outcome of the trial.

¶ 17    The Act provides a three-stage mechanism for defendants who allege a substantial violation of constitutional rights at trial. *People v. Pendleton*, 223 Ill. 2d 458, 471-73 (2006). At the first stage, the circuit court may dismiss a petition that is "frivolous or *** patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2012). At the second stage, "the circuit court must determine whether the petition and any accompanying documentation make a 'substantial showing of a constitutional violation.' " *People v. Domagala*, 2013 IL 113688, ¶ 33 (quoting *People v. Edwards*, 197 Ill. 2d 239, 246 (2001)). If the defendant makes a substantial showing that his constitutional rights were violated, he is entitled to a third stage evidentiary hearing. *Id.* ¶ 34.

¶ 18    Here, defendant's petition was dismissed at the second stage of review. At the second stage, "all well-pleaded facts that are not positively rebutted by the trial record are *** taken as true." *Pendleton*, 223 Ill. 2d at 473. The circuit court may dismiss a petition only if the allegations, "liberally construed in light of the trial record," cannot support a substantial showing of a constitutional violation. *People v. Hall*, 217 Ill. 2d 324, 334 (2005). "The inquiry into whether a post-conviction petition contains sufficient allegations of constitutional deprivations does not require the circuit court to engage in any fact-finding or credibility determinations." *People v. Coleman*, 183 Ill. 2d 366, 385 (1998). Therefore, our review of the dismissal of a postconviction petition at the second stage is *de novo*. *People v. Dupree*, 2018 IL 122307, ¶ 29.

¶ 19    Both the United States and Illinois Constitutions guarantee criminal defendants the right to the effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). More specifically, a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. "[W]hether a failure to investigate the testimony of a potential witness amounts to incompetence depends on the value of the evidence to the case." *People v. Marshall*, 375 Ill. App. 3d 670, 676 (2007) (citing *People v. Steidl*, 177 Ill. 2d 239, 256 (1997)).

¶ 20    Cross-examination is the primary method by which a witness's believability and credibility may be challenged. *People v. Blue*, 205 Ill. 2d 1, 12 (2001). Accordingly, the sixth amendment right of confrontation includes the right to cross-examine a witness regarding any fact that would reasonably tend to show that the testimony of the witness might be influenced by bias, interest, or motive. *People v. Lucas*, 151 Ill. 2d 461, 491 (1992) (citing *People v. Triplett*, 108 Ill. 2d 463, 474 (1985)). The " 'exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.' " *Triplett*, 108 Ill. 2d at 482 (quoting *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974)).

¶ 21    While only actual convictions may be used to attack the character of a witness, " 'the fact that a witness has been arrested or charged with a crime may be shown or inquired into where it would reasonably tend to show that his [or her] testimony might be influenced by interest, bias or a motive to testify falsely.' " (Emphasis omitted.) *Id.* at 475 (quoting *People v. Mason*, 28 Ill. 2d 396, 401 (1963)). The fact that a witness is under investigation or has pending charges may be used to impeach the witness by showing that he or she is motivated to assist the prosecution in order to receive leniency in his or her own case. *People v. Godina*, 223 Ill. App. 3d 205, 210 (1991); *Triplett*, 108 Ill. 2d at 486 (holding that the defendant was "denied his right to confront

the witnesses against him when he was precluded from cross-examining the juvenile witness" as to the fact that the witness was in custody at the time of his testimony and regarding the juvenile delinquency petitions which could have been reinstated against the witness at the time of the defendant's retrial. "This was *** constitutional error of the first magnitude and no amount of showing of want of prejudice [could] cure it." (Internal quotation marks omitted.)); *People v. Baptiste*, 37 Ill. App. 3d 808, 811-13 (1976) ("[W]here the key prosecution witnesses were on probation at the time of trial and might, therefore, be vulnerable to pressure, either real or imagined," the trial court's refusal to allow cross examination on the issue denied the defendant a fair trial. "It was for the jury to decide whether the pending charges against [a witness] provided a further motive to offer false testimony beyond the self-evident interest of a victim of a crime."). Moreover, it "is not material whether the case pending against the witness involves the same transaction for which the defendant is on trial; an unrelated pending charge is a proper subject for cross-examination." *People v. Kellas*, 72 Ill. App. 3d 445, 453 (1979). "The jury is entitled to know the nature of the criminal charges pending against a witness in order to have complete information so as to be better able to resolve the bias question." (Internal quotation marks omitted.) *People v. Makiel*, 358 Ill. App. 3d 102, 115 (2005). To impeach a witness by showing bias, interest, or motive, the evidence used must not be "remote or uncertain" and "must give rise to the inference that the witness has something to gain or lose by his [or her] testimony." (Internal quotation marks omitted.) *Triplett*, 108 Ill. 2d at 475-76.

¶ 22    In this case, the defense and prosecution presented competing versions of events at trial. Koll testified that defendant ran into her and took an envelope from her grocery cart. Defendant's testimony, however, was essentially that the incident was a misunderstanding. Defendant testified that he had accidentally bumped into Koll, inadvertently causing her to drop some

papers, and when he attempted to retrieve them for her, Koll began screaming that she was being robbed. Defendant then left the area, as he was afraid of being arrested because he was a black man in a white neighborhood involved in an incident with a white woman.

¶ 23    In the present case, defendant made a substantial showing that trial counsel's failure to investigate Koll amounted to ineffective assistance. Koll's credibility was critical to the State's case, and evidence regarding Koll's pending fraud and bribery charges is the kind of evidence that would " 'reasonably tend to show that h[er] testimony might be influenced by interest, bias or a motive to testify falsely,' " as it could have shown that she had an interest or motive to curry sympathy or favor as a crime victim in her case. (Emphasis omitted.) See *Triplett*, 108 Ill. 2d at 475. In fact, defense counsel recognized the importance of such evidence in an affidavit attached to defendant's postconviction petition, in which he averred that had he known that information, he would have used it to impeach Koll, albeit without acknowledging his own shortcomings in failing to investigate her. See *People v. Hobson*, 2014 IL App (1st) 110585, ¶ 26 (counsel provided "unreasonable assistance" where he "failed to find and present evidence" regarding favorable treatment two witnesses received after testifying before the grand jury); *Steidl*, 177 Ill. 2d at 256-57 (the defendant made a substantial showing of ineffective assistance of counsel where the evidence was closely balanced such that the jury's decision "rested upon its judgment of the credibility of the witnesses that came before it," and counsel's "failure to investigate precluded the jury from hearing evidence" tending to discredit the testimony of two key witnesses.).

¶ 24    Although the State argues that there is no indication that federal prosecutors would have granted her leniency, defendant need not show that leniency would have been actually granted, only that Koll may have believed that she could obtain such leniency by being the victim of a

crime. See *Triplett*, 108 Ill. 2d at 476 ("the defendant need not show before cross-examining a witness as to the witness' possible bias, interest, or motive that any promises of leniency have been made or any expectations of special favor exist in the mind of the witness. *** [D]efense counsel is entitled to inquire into such promises or expectations whether based on fact or imaginary" (internal quotation marks omitted)); *People v. Freeman*, 100 Ill. App. 3d 478, 481 (1981) ("[D]efense counsel need not show beforehand that any promises of leniency have been made or any expectations of special favor exist in the mind of the witness.").

¶ 25    Moreover, it would not be unreasonable for Koll to believe that she could curry favor in exchange for her cooperation in the case against defendant. The federal sentencing guidelines allow, on motion by the government, a downward departure in sentence for defendants who provide substantial assistance in the investigation or prosecution of another person, which has been held to include assistance to not just federal, but also state authorities. See *United States v. Love*, 985 F.2d 732, 735 (3d Cir. 1993) ("[S]everal federal courts of appeals, including this one, have assumed without discussion, that [the sentencing guideline allowing a downward departure upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense] applies to assistance to state as well as federal authorities.").

¶ 26    In light of defendant's version of events—that the situation was merely a misunderstanding—it is also possible that if Koll later realized her mistake, she may have been motivated to maintain an untruthful account fearing prejudice in her case for wrongfully accusing defendant of a crime. In these circumstances, the evidence regarding Koll's criminal charges for fraud and conspiracy to commit bribery would have been admissible evidence relating to Koll's credibility. See *Freeman*, 100 Ill. App. 3d at 482 (where the facts "reasonably

warranted the conclusion that [the witness] might have been leniency-motivated to testify against the defendant, \*\*\* defense counsel should have been allowed to explore that possibility of cross-examination").

¶ 27    Accordingly, defendant made a substantial showing that counsel performed deficiently in failing to investigate Koll and cross-examine her on her background, and the deficient performance prejudiced defendant. See *Strickland*, 466 U.S. at 687; *Triplett*, 108 Ill. 2d at 485-86 ("Every effort must be made to allow a jury to accurately assess a witness' reliability. We cannot speculate as to how the jury would have viewed [the witness]'s reliability had they known" the relevant evidence.); *Kellas*, 72 Ill. App. 3d at 454 ("This right to cross-examine a witness about a pending charge against him to show bias cannot be defeated merely because there is other evidence that the witness is biased; nor can it be defeated by a claim of lack of prejudice." "To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the witness' testimony would be a denial of one's right to effective cross-examination." (Emphases omitted.)); *Makiel*, 358 Ill. App. 3d at 116 (Where the postconviction petition "raise[d] unanswered questions of fact as to whether the prosecution had leverage over [a witness] justifying defendant's allegation that [the witness] had a possible bias or motive to fabricate due to the pending \*\*\* charge," those "questions can only be answered by matters outside the record, thereby demonstrating the need for an evidentiary hearing.").

¶ 28    For the foregoing reasons, we reverse the judgment of the circuit court and remand the cause for an evidentiary hearing.

¶ 29    Reversed and remanded.

**No. 1-17-1964**

| | |
|---|---|
| **Cite as:** | *People v. Myles*, 2020 IL App (1st) 171964 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 09-C5-50429; the Hon. Colleen Ann Hyland, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, Heidi Linn Lambros, and Kieran M. Wiberg, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Janet C. Mahoney, and Retha Stotts, Assistant State's Attorneys, of counsel), for the People. |