2021 IL App (1st) 200627-U

SECOND DIVISION
November 2, 2021

No. 1-20-0627

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Respondent-Appellee, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 13 CR 13268 (05) |
| TYSHAWN REESE, | ) | |
| | ) | Honorable |
| Petitioner-Appellant. | ) | Vincent M. Gaughan, |
| | ) | Judge Presiding. |
| | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Cobbs concurred in the judgment.

**O R D E R**

¶ 1   *Held*: The circuit court erred in summarily dismissing the petitioner's *pro se* postconviction petition where the petition set forth an arguable claim of ineffective assistance of trial counsel on the basis of counsel's failure to investigate the State's sole identification witness.

¶ 2   The petitioner, Tyshawn Reese, appeals from the circuit court's summary dismissal of his postconviction petition filed pursuant to the Postconviction Hearing Act (725 ILCS 5/122-1 *et seq.*

(West 2018)). On appeal, he contends that the circuit court erred in summarily dismissing his petition where he set forth an arguable claim of ineffective assistance of trial counsel based upon counsel's failure to investigate the State's sole eyewitness, now former Chicago police officer Ronald Coleman, who had amassed over 60 misconduct complaints and was subsequently convicted on a federal obstruction of justice charge. For the following reasons, we reverse and remand for further proceedings under the Act.

¶ 3                                    I. BACKGROUND

¶ 4     Because the record before us is voluminous we set forth only those facts relevant to the resolution of the issues raised in this appeal. Together with codefendants, Donzell Bonner, Deandre Fields, Antonio Bryant, and Dajuan Gates, the petitioner was charged with *inter alia*, attempted first degree murder and aggravated assault of a peace officer, arising from two shooting incidents that occurred in Chicago on the evening of April 28, 2013. Among other things, relevant to this appeal, the charges alleged that the petitioner personally discharged the firearm that caused great bodily harm to Nicklaus Dorsey. In addition, the charges alleged that the petitioner placed Officer Ronald Coleman in reasonable apprehension of a battery by pointing a firearm at Coleman while knowing him to be a peace officer engaged in the performance of his duties.

¶ 5     The following relevant evidence was adduced at the petitioner's bench trial, which was severed from all codefendants.

¶ 6     Nicklaus Dorsey testified that at 10:30 p.m. on April 28, 2013, he was crossing the street from his home, at 315 South Leavitt Street, to his parked car when he noticed a maroon vehicle stopped in the street. Dorsey observed someone exit the vehicle but could not tell whether it was a man or a woman. He also could not see who was inside the vehicle. Suddenly, Dorsey heard multiple gunshots and took cover behind his own car. He fled to his home, where he noticed that

he was wounded. Dorsey acknowledged that he made no remark to any passersby or bystander about being shot before going into his home. He stated, instead, that as he entered his home, he told his girlfriend that he had been shot. Dorsey was subsequently transported to the hospital where it was determined that he sustained a bullet wound to his buttocks.

¶ 7 Former Chicago narcotics police officer Ronald Coleman next testified that at approximately 10 p.m. that evening, he was off duty, in plain clothes in an unmarked police car in the 300 block of South Leavitt Street. The officer had his badge, and his weapon, a .45-caliber semiautomatic gun, which was loaded with 10 rounds. Officer Coleman saw a maroon four-door Buick with four occupants turn onto Leavitt Street and abruptly stop directly across from his vehicle, about five to six feet away. Two men, whom the officer later identified as the petitioner and codefendant Bryant, exited the maroon Buick from the rear passenger side and rear driver side and fired multiple gunshots. Officer Coleman averred that the petitioner had a silver semi-automatic pistol while the other shooter had a silver revolver. After both men reentered the maroon vehicle and it drove away, Officer Coleman reported the incident, made a U-turn, and followed the maroon car. The officer averred that as he was leaving, he heard a man on the street exclaim, "These motherf*****s shot me."

¶ 8 Officer Coleman next testified that he caught up to the maroon vehicle as it came to a stop at a red light on Van Buren Street, where a state trooper was conducting an unrelated traffic stop. Officer Coleman averred that he exited his car, announced his office, and told the state trooper what had happened. He stated that at this point the occupants of the maroon car turned in his direction and that the petitioner and the other man in the rear seat slumped down. Holding his badge in one hand and his service weapon in the other, Officer Coleman approached the maroon car, announced his office, and told the occupants to stop the car and get out. The petitioner then

pointed a silver semi-automatic pistol at him. In response, the officer fired ten shots at the petitioner, as the maroon car sped off. After the state trooper confirmed that Officer Coleman was indeed a police officer, her drove off in pursuit of the maroon car.

¶ 9       On the following day, Officer Coleman viewed a photographic array from which he identified the petitioner as the man who pointed a gun at him. He subsequently also identified the petitioner from a lineup.[1]

¶ 10      A security video from a high school in the 300 block of South Leavitt Street was shown at trial and Officer Coleman described the video as it was played for the court. While the video corroborates the officer's testimony about the sequence of events it does not corroborate his identification of the petitioner.

¶ 11      On cross-examination, Officer Coleman was asked about an interview he gave to the Independent Police Review Authority (IPRA) on April 30, 2013, in which he described the petitioner's gun as black and not silver. The officer averred that he had always described the gun as silver and that the investigator must have erred in preparing his statement. When asked if he was saying that the stenographer who transcribed his interview with the IPRA had erred, Officer Coleman maintained that the investigator must have made a mistake and asserted that he had no explanation for the interview transcript reflecting that he had described the gun as black.

¶ 12      On cross-examination, the officer further admitted that in the IPRA interview he had described the petitioner's weapon as a silver revolver and not a silver semi-automatic gun as he

---

[1] This testimony was corroborated by Chicago Police Detective Dave March, who averred that on April 29, 2013, he showed Officer Coleman a photographic array from which Coleman identified the petitioner as the man who pointed a gun at him after firing a gun in the street. Detective March further testified that after the petitioner was arrested in June 2013, he showed Officer Coleman a lineup from which Coleman again identified the petitioner as the man who pointed a gun at him after firing a gun in the street.

had just testified at trial. He explained, however that it was "hard to tell if it [was] a revolver from where" he had been. Officer Coleman further acknowledged that a silver revolver was found in the maroon vehicle. He also admitted that he was aiming at the petitioner when shooting at the maroon car but that he did not hit the petitioner, and instead injured codefendant Bryant, who had been holding a silver revolver earlier during the shooting on Leavitt Street. The officer, however, denied confusing the petitioner with Bryant as the man who aimed the gun at him.

¶ 13    Illinois State Trooper Timothy Mayerbock next testified that he was conducting a traffic stop on the night in question when a man holding a badge announced loudly that he was a police officer before firing several shots into a red car about 40 feet away. When the red car drove away, the state trooper confirmed that the shooter was in fact a police officer. He then reported the incident by radio and proceeded to pursue the red car.  A few minutes later, he saw the red car with the rear window shot out, a revolver in plain view, and a blood trail leading away from the car.

¶ 14    Because the state trooper was conducting a traffic stop at the time of the incident, the video system in his patrol car was recording. That video was played for the court and Mayerbock was asked to describe what was being shown. Because of the camera angle, the video does not show Officer Coleman until after the shots and the maroon car's departure. Coleman is also not seen interacting with Mayerbock before firing any shots. The video, however, does reflect Officer Coleman yelling "police" two times before any shots were heard.

¶ 15    Chicago Police Officer Maureen Boyle next testified that on the night in question she responded to a report of a wounded man. Bystanders directed her to an alley where she found codefendant Bryant bleeding from multiple gunshot wounds. Officer Boyle called for an ambulance and followed the trail of blood from Bryant to a maroon Buick with a broken rear window and a revolver on the back-seat floor.

¶ 16    The parties next stipulated, *inter alia*, that codefendant Bryant's fingerprint was found on the rear passenger door of the maroon Buick and that his DNA was found on two cellphones inside that vehicle.

¶ 17    The parties further stipulated to the collection and testing of firearms evidence. According to that stipulation, a .45-caliber revolver was found on the rear floor of the Buick, and five cartridge cases found in the revolver had been fired from it. Ten cartridge cases found at the scene where Officer Coleman fired at the maroon car had been fired from Coleman's .45-caliber semi-automatic pistol. Nine .45-caliber cartridge cases found at Leavitt Street had been fired from one gun that was neither the revolver nor Officer Coleman's pistol. A spent bullet from Leavitt Street, and two spent bullets found in the maroon car, were not fired from the revolver, but Officer Coleman's pistol could not be either identified or eliminated as their source.

¶ 18    Following closing arguments, the circuit court found the petitioner guilty of attempted first degree murder and aggravated assault of a peace officer. The court subsequently sentenced the petitioner to concurrent prison terms of 32- and 5-years imprisonment.

¶ 19    The petitioner appealed, arguing that: (1) the State failed to prove him guilty beyond a reasonable doubt of both charges; and (2) his trial counsel was ineffective for failing to move for a substitution of judge, where the same trial judge that presided over his trial had already presided over his codefendants' cases and found them guilty. On appeal, we affirmed the petitioner's convictions and sentence. *People v. Reese*, 2018 IL App (1st) 153631-U.

¶ 20    The petitioner subsequently filed the instant *pro se* postconviction petition. Therein, among other things, he alleged ineffective assistance of trial counsel for counsel's failure to: (1) throw out the aggravated assault of a peace officer charge; (2) investigate the case thoroughly; and (3) call an expert on eyewitness misidentification, where the State's sole eyewitness, Officer Ronald

Coleman, was an unreliable witness.

¶ 21    The petitioner's allegation that Coleman was an unreliable witness was supported with: (1) details from trial noting the inconsistencies between Coleman's testimony and the other evidence; (2) two newspaper articles (from the Chicago Tribune and the Chicago Sun Times); and (3) a decision by the Seventh Circuit Court of Appeals.

¶ 22    The two newspaper articles detail Coleman's actions during his stint with the Drug Enforcement Agency (DEA), which led to his federal conviction for obstruction of justice. According to the articles, Coleman was sentenced to five years imprisonment for obstruction of justice, after he tipped off one of the Conservative Vice Lord gang's major heroin suppliers to a federal investigation in June 2014. The Chicago Tribune Article further notes that Coleman had over 60 complaints filed against him while he worked for the Chicago Police Department (CPD), and that he was named in three civil lawsuits (two involving illegal strip searches of suspects, and one involving a police shooting of a fleeing suspect).

¶ 23    The decision of the Seventh Circuit, affirming Coleman's conviction for federal obstruction of justice, includes further details regarding Coleman's crimes. See *United States v. Coleman*, 914 F.3d 508, 510 (7th Cir. 2019). Moreover, the decision explicitly affirms Coleman's sentence enhancement for perjury, noting that he lied on the stand during his jury trial.

¶ 24    On January 24, 2020, the circuit court summarily dismissed the *pro se* postconviction petition. In doing so, among other things, the court found that the petitioner's ineffective assistance of counsel claim based on Coleman's unreliability as a witness was a "bald, conclusory" allegation. The petitioner now appeals contending that the circuit court erred in summarily dismissing his *pro se* petition where he set forth an arguable claim of ineffective assistance of trial counsel.

¶ 25                                   III. ANALYSIS

¶ 26    We begin by noting that the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et. seq.* (West 2018)) provides a three-step process by which a convicted defendant may assert a substantial denial of his or her constitutional rights in the proceedings that led to the conviction.   *People v. Edwards*, 2012 IL 111711, ¶ 21; *People v. Tate*, 2012 IL 112214, ¶ 8; see also *People v. Walker*, 2015 IL App (1st) 130530, ¶ 11 (citing *People v. Harris*, 224 Ill. 2d 115, 124 (2007)). A proceeding under the Act is a collateral attack on a prior conviction and sentence and is therefore "not a substitute for, or an addendum to, direct appeal." *People v. Kokoraleis*, 159 Ill. 2d 325, 328 (1994); see *Edwards*, 2012 IL 111711, ¶ 21; *People v. Barrow*, 195 Ill. 2d 506, 519 (2001). Accordingly, any issues that were decided on direct appeal are *res judicata*, and any issues that could have been presented on direct appeal, but were not, are waived.  *Edwards*, 2012 IL 111711, ¶ 21; see also *People v. Ligon*, 239 Ill. 2d 94, 103 (2010); *People v. Reyes*, 369 Ill. App. 3d 1, 12 (2006).

¶ 27    At the first stage of postconviction proceedings, such as here, the circuit court must independently review the petition, taking the allegations as true, and determine whether " 'the petition is frivolous or patently without merit.' " *People v. Hodges*, 234 Ill. 2d 1, 10 (2009) (quoting 725 ILCS 5/122–2.1(a)(2) (West 2006)); see also *Tate*, 2012 IL 112214, ¶ 9. At this stage, the court may not engage in any factual determinations or credibility findings.  See *People v. Plummer*, 344 Ill. App. 3d 1016, 1020 (2003); see also *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998). Instead, the court may summarily dismiss the petition only if it finds the petition to be frivolous or patently without merit.  See *People v. Ross*, 2015 IL App (1st) 120089, ¶ 30; see also *Hodges*, 234 Ill. 2d at 10. A petition is frivolous or patently without merit if it has no arguable basis either in law or in fact.  *Tate*, 2012 IL 112214, ¶ 9. Our supreme court has explained that a petition lacks an arguable basis where it "is based on an indisputably meritless legal theory or a fanciful factual allegation"—in other words, an allegation that is "fantastic or delusional," or is "completely

contradicted by the record." *Hodges*, 234 Ill. 2d at 11-12; *People v. Brown*, 236 Ill. 2d 175, 185 (2010); see also *Ross*, 2015 IL App (1st) 120089, ¶ 31. Our review of summary dismissal is *de novo*. *Tate*, 2012 IL 112214, ¶ 10.

¶ 28     On appeal, the petitioner argues that his petition set forth an arguable claim of ineffective assistance of trial counsel based on counsel's failure to investigate possible impeachment evidence about the State's sole eyewitness, Officer Coleman. The petitioner points out that by the time of his trial, Officer Coleman had amassed over 60 misconduct complaints and was the subject of a federal investigation for obstruction of justice. Where the petitioner was convicted solely based on Coleman's identification testimony, the petitioner contends that counsel's failure to investigate and impeach Coleman on the basis of this evidence, constituted ineffective assistance of counsel.

¶ 29     The State initially responds that the petitioner has forfeited this issue because he did not raise it in his postconviction petition. In support, the State points out that while the petitioner alleged that Officer Coleman was an "unreliable witness," and that counsel was ineffective for a variety of reasons, including his failure to "investigate," it nowhere explicitly alleged counsel's ineffectiveness on the basis of counsel's failure to investigate impeachment evidence regarding Officer Coleman. For the following reasons, we disagree.

¶ 30     It is axiomatic that if an issue is not raised in the original petition, then it may not be raised on appeal. See 725 ILCS 5/122-3 (West 2018) ("Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived."). Nonetheless, "[b]ecause a *pro se* petitioner will likely be unaware of the precise legal basis for his claim the threshold for survival is low, and a *pro se* petitioner need only allege enough facts to make out a claim that is arguably constitutional for purposes of invoking the Act." *People v. Thomas*, 2014 IL App (2d) 12001, ¶ 48; see also *People v. Mars*, 2012 IL App (2d) 110695, ¶ 32. Accordingly, "[p]etitions filed *pro*

*se* must be given a liberal construction and are to be viewed with a lenient eye, allowing borderline cases to proceed." *Thomas*, 2014 IL App (2d) 12001, ¶ 48

¶ 31    In the present case, contrary to the State's position, and liberally construing the petitioner's allegations, we find that the petition sets forth enough facts to make out a claim of ineffective assistance of counsel on the basis of counsel's failure to investigate Officer Coleman. The petition alleges both that trial counsel was ineffective for failing to investigate the petitioner's case, and that the State's key eyewitness, Officer Coleman, was an unreliable witness, and a person not to be trusted. In support of the latter argument, the petition attaches evidence discovered by the petitioner during his incarceration, which directly challenges Officer Coleman's trustworthiness, namely evidence that he was convicted for obstruction of justice, and that numerous complaints of misconduct were brought against him while he worked as an officer with the CPD. In addition, the petition alleges that counsel was ineffective for failing to challenge Coleman's reliability by failing to call an expert witness on identifications. According to the petition, had counsel challenged the officer's reliability the outcome of the proceedings would have been different because the State's only identification testimony came from Coleman and no other physical or corroborative identification evidence was presented at trial.

¶ 32    While the State correctly point out that the petition nowhere explicitly alleges counsel's ineffectiveness for failure to investigate impeachment evidence regarding Coleman, liberally construed, the petition certainly sets forth enough facts to make an arguable claim of counsel's ineffectiveness on that ground. Keeping in mind that the *pro se* petitioner was likely unaware of the precise legal basis for this claim, we conclude that the allegations in the petition bear a sufficient relationship to the ineffective assistance of counsel claim raised in this appeal, so that the issue is not novel but rather based on the same underlying subject matter as the petition. See

*Thomas*, 2014 IL App (2d) 121001, ¶ 87 ("the assertions in the petition need bear only 'some relationship' to the arguments raised on appeal") (quoting *Mars*, 2012 IL App (2d) 110695, ¶ 32). Accordingly, we find that the issue is not forfeited for purposes of appeal. *Thomas*, 2014 IL App (2d) 121001, ¶ 87 (noting that the defendant's petition and the postconviction appellate arguments related to the same underlying issue so that the arguments in the defendant's appeal were not forfeited).

¶ 33    In so holding, we find the decision in *People v. Reed*, 2014 IL App (1st) 122610, relied on by the State, to be distinguishable. In *Reed*, on appeal, the petitioner alleged a completely different basis for his constitutional violation regarding appellate counsel's effectiveness. *Id.*, ¶ 59. Specifically, while before the circuit court, the petitioner alleged appellate counsel's ineffectiveness for counsel's failure to challenge the admissibility of certain hearsay statements, on appeal, the petitioner challenged the admissibility of those statement on the basis of his Fifth Amendment right to remain silent and the right to request the presence of counsel. *Id.* Unlike *Reed*, in the present case, the petitioner does not argue a different basis for his constitutional argument regarding trial counsel's ineffectiveness on appeal. Instead, his appellate argument parallels the allegations in his *pro se* petition regarding trial counsel's failure to investigate, and Officer Coleman's unreliability as a witness, based upon the complaints filed against Coleman while he was a police officer. While the *pro se* petition does not use the magic words "impeachment evidence" in tandem with the allegation regarding counsel's "failure to investigate," liberally construed, it sets forth sufficient facts to assert that claim for purposes of this appeal.

¶ 34    The State next argues that even if we determine that the petitioner's argument regarding counsel's ineffectiveness is not forfeited, summary dismissal of the petition was proper because the petition did not attach any affidavits, records or other evidence supporting the allegation that

counsel was ineffective for failing to investigate Coleman. In making this argument, the State concedes that the petition attaches two newspaper articles and a court decision detailing Coleman's misconduct and the federal criminal conviction for obstruction of justice. Nonetheless, the State asserts that these documents are insufficient evidence of Coleman's misconduct and that the petitioner was required to obtain "verification" of such misconduct through FOIA requests. In the very least, the State contends, the petitioner was required to explain why he did not make such FOIA requests by way of an affidavit. We strongly disagree.

¶ 35    This court has repeatedly held that newspaper articles alone are sufficient to support similar arguable factual postconviction allegations. See *e.g.*, *People v. Almodovar*, 2013 IL App (1st) 101476 (where the petitioner attached a Chicago Tribune article detailing how a defendant had been retried and acquitted after it came to light that the arresting detective in his case, who was the same detective that arrested the petitioner, had intimidated witnesses and framed the defendant for murder); see also *People v. Mitchell*, 2012 IL App (1st) 100907 (where the petitioner attached a special prosecutor's report regarding an investigation into crimes committed by Area 2 police officers, and one of those officers was the interrogating officer in the petitioner's case).

¶ 36    Contrary to the State's assertion, there is no requirement that a petitioner attach affidavits and FOIA requests to corroborate the evidence provided by the attached newspaper articles. At the first stage of postconviction review, the petitioner need only provide a sufficient factual basis to show the allegations in the petition are " 'capable of objective or independent corroboration.' " *People v. Allen*, 2015 IL 113135, ¶ 24 (quoting *People v. Collins*, 202 Ill. 2d 59, 67 (2002)). Prior to the third-stage evidentiary hearing the petitioner is not required to provide any such objective corroboration, but rather must only "allege enough facts to make out a claim that is arguably

12

constitutional." *Hodges*, 234 Ill. 2d at 9.

¶ 37    The petitioner here has clearly done so by attaching articles, which establish that, at the time of his trial, the State's sole identification witness was the subject of a federal investigation and had dozens of complaints filed against him with the CPD. Accordingly, we reject the State's procedural argument and proceed with the merits of the petitioner's ineffective assistance of counsel claim.

¶ 38    It is axiomatic that claims of ineffective assistance of counsel are resolved under the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Lacy*, 407 Ill. App. 3d 442, 456 (2011); see also *People v. Colon*, 225 Ill. 2d 125, 135 (2007) (citing *People v. Albanese*, 104 Ill. 2d 504 (1984) (adopting *Strickland*)). Under *Strickland*, the petitioner must establish both: (1) that his counsel's conduct fell below an objective standard of reasonableness; and (2) that he was prejudiced by that conduct.  See *Lacy*, 407 Ill. App. 3d at 456; see also *People v. Ward*, 371 Ill. App. 3d 382, 434 (2007) (citing *Strickland*, 466 U.S. at 687-94)).

¶ 39    In the context of a first stage postconviction proceeding, such as the on here, a petitioner need only show that he can arguably meet these two standards, *i.e.*, (1) it is *arguable* that counsel's performance was deficient and (2) it is *arguable* that he was prejudiced by it. See *Tate*, 2012 IL 112214, ¶ 19; *People v. Wilson*, 2013 IL (1st) 112303, ¶ 20; see also *Hodges*, 234 Ill. 2d at 17.

¶ 40    For the following reasons, in the present case, we find that the *pro se* petition sufficiently alleged that counsel was arguably both deficient and that this deficient performance prejudiced the petitioner, so as to permit the petition to proceed to the second stage of postconviction review.

¶ 41    First, where the State's case entirely rested on the identification testimony of Officer Coleman, it is in the very least arguable that trial counsel's failure to investigate the officer's background and use the evidence of his prior misconduct to impeach him, fell below an objective

standard of reasonableness. While typically counsel's decisions regarding what evidence to present at trial are considered matters of trial strategy, such strategic decisions "may be made only after there has been a 'thorough investigation of law and facts relevant to plausible options.' " *People v. Gibson*, 244 Ill. App. 3d 700, 703-704 (1993). Accordingly, our courts have repeatedly held that trial counsel has a professional duty to conduct "reasonable investigations or to make reasonable decisions that make[] particular investigations unnecessary." *People v. Domagala*, 2013 IL 113688, ¶ 38. The duty to investigate arises from counsel's basic function, which is to ensure that the adversarial process works the way it should. *Id*. An attorney's failure to investigate witnesses may constitute objectively unreasonable assistance. See *e.g.*, *People v. Myles*, 2020 IL App (1st) 171964, ¶ 23 (holding that counsel's failure to investigate a key State's witness's background, which would have revealed that the witness had pending charges of bribery and fraud, constituted ineffective representation); *People v. Bolden*, 2014 IL App (1st) 123527, ¶ 38 (holding that counsel's failure to investigate and contact alibi witnesses constituted objectively unreasonable assistance); *Hodges*, 234 Ill. 2d at 20-21 (holding that counsel's failure to investigate and call three witnesses who would have testified that they observed an individual take a gun from the victim's body after the defendant shot him, was arguably objectively unreasonable, as it would have supported the defendant's theory of defense, *i.e.* a finding of guilt on second degree murder based on an unreasonable belief that deadly force was necessary).

¶ 42   Contrary to the State's position, counsel's failure to investigate cannot be excused by speculating that some of the allegations of the officer's misconduct may have occurred after the petitioner's trial and were therefore undiscoverable. The newspaper articles attached to the petition clearly state that the events leading up to Coleman's obstruction of justice conviction took place in the summer of 2014 and that Coleman was charged in 2016. Where the petitioner's trial took

place in 2015, by the time Coleman testified for the State and against the petitioner, he was no longer working for the CPD and was employed by the DEA for seven months. This timeline makes clear not only that at the time of the petitioner's trial, all the complaints against Coleman mentioned in the articles were already filed with the CPD, but also that it was possible that Coleman was already being investigated for obstruction of justice.

¶ 43 Under this record, we find that the petitioner has made an arguable claim that counsel was reasonably deficient for failing to investigate Officer Coleman's background and to impeach him with evidence of his misconduct. See *Myles*, 2020 IL App (1st) 171964, ¶ 23 (holding that trial counsel's failure to investigate and discover that a State witness had pending charges for fraud and bribery, and counsel's failure to use that information to impeach the witness amounted to deficient performance for purposes of an ineffective assistance of counsel claim, where the witness's credibility was critical to the State's case).

¶ 44 The State nonetheless asserts that even if the petitioner can establish that counsel's performance was arguably unreasonable, in light of the overwhelming evidence presented at his trial, he cannot establish prejudice so as to succeed under *Strickland*. We disagree.

¶ 45 Under the second prong of *Strickland*, the petitioner was only required to show that it is arguable that "but for" counsel's deficient performance, there is a reasonable probability that the result of his proceeding would have been different. *Lacy*, 407 Ill. App. 3d at 457; see also *Colon*, 225 Ill. 2d at 135. "[A] reasonable probability that the result would have been different is a probability sufficient to undermine confidence in the outcome--or put another way, that counsel's deficient performance rendered the result of [the proceedings] unreliable or fundamentally unfair." *People v. Evans*, 209 Ill. 2d 194, 220 (2004); see also *Plummer*, 344 Ill. App. 3d at 1019 (citing

*Strickland*, 466 U.S. at 694)).

¶ 46 In the present case, the petitioner has arguably established such a reasonable probability. Contrary to the State's position, the evidence presented at the petitioner's trial was far from overwhelming. The State's case against the petitioner on the charges of attempted murder and aggravated assault of a peace officer was premised in its entirety on the single eyewitness testimony of Officer Coleman. Officer Coleman was the only one who identified the petitioner as one of the shooters on Leavitt Street and as the individual who subsequently pointed a gun at him from inside the maroon vehicle. While physical evidence of the bullets retrieved at the scene and the video surveillance footage supported the officer's testimony regarding the sequence of events, and the fact that there were two shooters on Leavitt Street, without the officer's identification testimony, nothing in that physical evidence linked the petitioner to the crimes.

¶ 47 Therefore, evidence of the officer's pattern of misconduct at CPD and his indictment on federal obstruction of justice charges, which went directly to his veracity as a witness, arguably had the potential of changing the outcome of the petitioner's trial. Accordingly, it is undeniable that counsel's deficient performance arguably could have prejudiced the petitioner. See *Myles*, 2020 IL App (1st) 171964, ¶ 23 (holding that failure to investigate a key State's witness's background, which included pending charges of bribery and fraud prejudiced the petitioner because the witness's credibility was central to the State's case); *People v. Steidel*, 177 Ill. 2d 239, 256-57 (1997) (holding that where no physical evidence linked the defendant to the crime, and the jury's determination necessarily rested on witness credibility, counsel's failure to investigate witnesses prejudiced the defendant).

¶ 48 Since the petitioner has presented an arguable claim of ineffective assistance of counsel, summary dismissal of his petition was improper. The petition should have been advanced to the

second stage of postconviction review, where counsel could be appointed to aid the petitioner. *Id.*

¶ 49                                    III.  CONCLUSION

¶ 50     For the aforementioned reasons, we reverse the circuit court's summary dismissal of the

pro se petition and remand for further proceedings under the Act (725 ILCS 5/122-2.1(b) (West

2018)).

¶ 51     Reversed and remanded.